(August 12, 1999)

■ In the Matter of Deborah K. Mitchell, Appellant-Respondent, v Thomas C. Mitchell, Respondent-Appellant. [693 NYS2d 351] —Mercure, J. (1) Cross appeals from an order of the Family Court of Broome County (Ray, J.), entered May 20, 1998, which, *inter alia*, partially granted petitioner's application, in a proceeding pursuant to Family Court Act article 4, for an award of child support, and (2) appeal from an order of said court, entered June 15, 1998, which denied petitioner's application for an award of counsel fees.

The parties were married on December 22, 1988. They have one child together, a son born in 1988. Prior to the parties' marriage, respondent paid approximately $117,000 for a one-third interest in Broome Hockey Associates, a corporation formed to hold title to a minor league hockey team. In a prenuptial agreement dated December 22, 1988, petitioner released any claim to respondent's interest in Broome Hockey Associates, "including property acquired thereafter in connection therewith, or any increase in value in the stock or [respondent's] interest in said corporation". The parties separated in 1992. In a November 1995 separation agreement, the parties reaffirmed their prenuptial agreement and, on the issue of child support, provided that because each was "earning a substantial salary sufficient to take care of the needs of the child when said child is with him or her, neither party is requesting support from the other". Nonetheless, respondent agreed to pay the child's private school tuition of approximately $2,200 per year, day-care expenses and an additional $37.50 per week directly to petitioner. Finally, the separation agreement provided that it was "entered into with the full knowledge of both parties as to the Child Support Standards Act [Family Ct Act § 413; Domestic Relations Law § 240 (hereinafter CSSA)] guidelines and because of the unique character of the custody allocation being 50% with each parent, both parties waive application of said act". The parties were divorced in December 1995 by a judgment which, *inter*

*alia*, provided for survival of the separation agreement and referred any future questions of child support, custody and visitation to Family Court.

In 1997, Broome Hockey Associates was sold to Madison Square Garden, L.P. and the minor league hockey team was moved to Hartford, Connecticut. For his share in Broome Hockey Associates, respondent received $400,000 in cash and a $250,000 promissory note payable in 60 monthly installments of $5,069.10, including interest at the rate of 8% per year. He reinvested $98,000 of the cash in a certificate of deposit (a "set-aside" for anticipated taxes on the transfer) and the balance in mutual funds. Respondent moved with the team to Hartford and began employment as executive vice-president of operations at an annual salary of $95,000.

Soon thereafter petitioner filed a support modification petition, seeking to have respondent pay current support equal to 17% of his adjusted gross income, a lump-sum award of $68,000, the same constituting 17% of the $400,000 cash payment received by respondent in connection with the sale of Broome Hockey Associates, support arrears and an award of counsel fees. Following a hearing, the Hearing Examiner first concluded that the separation agreement's general statement of the parties' knowledge of the CSSA guidelines did not constitute an enforceable opting-out agreement (*see*, Family Ct Act § 413 [1] [h]) and that, as a result, the child support provisions of the separation agreement were unenforceable and the petition was to be treated as a de novo application.

Then, the Hearing Examiner denied petitioner's request for a lump-sum distribution out of the proceeds of the sale of respondent's interest in Broome Hockey Associates, finding that "such an award would amount to nothing less than an award of equitable distribution of [that] asset", contrary to the express provision of the prenuptial agreement and separation agreement, and particularly in view of the fact that petitioner had offered no plan or strategy as to how such an award would be utilized for the benefit of the child. Next, making no determination as to the parties' "income" (*see*, Family Ct Act § 413 [1] [b] [5]), the Hearing Examiner concluded that respondent's financial and nonfinancial contributions to the child, coupled with petitioner's relatively modest out-of-pocket expenses for him, as well as the parties' grossly disparate incomes, warranted some deviation from the provisions of the CSSA and a determination that respondent be responsible for mandatory and discretionary add-ons under Family Court Act § 413 (1) (c) (4), (5), (6) and (7). The Hearing Examiner fixed respondent's

support obligation at $260 per week and required him to be fully responsible for maintaining health insurance coverage for the child and for all uninsured medical, dental, optometric and prescription expenses, including the cost of psychological counseling for the child, and the cost of the child's private school education. The issue of counsel fees was deferred pending submission of an affidavit of services and, if requested, a hearing.

The parties each filed objections to the Hearing Examiner's order. Upon its review of the objections, Family Court first concluded that the Hearing Examiner was correct in his conclusion that the petition was to be treated as a de novo application, thereby obviating the need for a showing of changed circumstances. Then, noting the Hearing Examiner's failure to establish respondent's income, Family Court proceeded to make its own findings in that regard, fixing respondent's income from employment at $95,000, reduced by FICA and Medicare deductions and his $258 weekly support obligation for his son from a previous marriage to a net figure of $74,319. Family Court then added "income" received from the $250,000 promissory note of $5,069 per month or $60,828 per year and additional investment income for a six-month period in 1997 which annualized to $15,984.16, bringing respondent's total income for the purpose of calculating his child support obligation to $151,131.16. Then, imputing income of $18,000 to petitioner, Family Court established the total combined parental income at $169,131.16, with respondent's share constituting 89% thereof, rendering a basic child support obligation of $233 per week on income up to the $80,000 "cap" (see, Family Ct Act § 413 [1] [c] [2]). Finally, Family Court concluded that the Hearing Examiner did not err in deviating from the child support percentage and considering the factors set forth in Family Court Act § 413 (1) (f) with regard to combined income in excess of the $80,000 cap and in fixing respondent's total support obligation at $260 per week plus the add-ons as detailed in the Hearing Examiner's decision. The parties cross-appeal.

Subsequently, petitioner's counsel submitted an affidavit detailing the legal services rendered on petitioner's behalf and his charge therefor in the amount of $7,052.35. In response, respondent's counsel indicated that, in view of respondent's offer to settle the proceeding at a support figure of $250 per week, "[t]he ultimate award of $260.00 was hardly worth the time and energy * * * put forth on behalf of [petitioner]". The Hearing Examiner denied the application and, upon review of

petitioner's objections, Family Court upheld the Hearing Examiner's determination. Petitioner appeals that order as well.

Initially, we reject respondent's contention that, absent a showing that the child's needs were not being met by the current support, Family Court was required to dismiss the petition. Family Court was correct in its determination that the November 1995 separation agreement did not constitute a valid opting-out agreement because of the lack of specification as to the amount that the basic child support obligation would have been (*see,* Family Ct Act § 413 [1] [h]; *Matter of Sievers v Estelle,* 211 AD2d 173, 175-176). The agreement's general statement as to the parties' knowledge of the CSSA is patently insufficient (*see, id.*). Under the circumstances, the Hearing Examiner correctly addressed the support issue de novo and petitioner was not required to establish that the child's needs were not being met with the voluntary support payments (*see, Matter of Collins v Collins,* 241 AD2d 725, 726-727, *appeal dismissed and lv denied* 91 NY2d 829).

Next, we are unpersuaded by the parties' assertions of error concerning Family Court's exercise of its broad discretion in imputing $18,000 in income to petitioner (*see, Matter of Bosshold v Bryant-Bosshold,* 243 AD2d 857). Notably, the record shows that petitioner previously had a job working for her father at a salary of $39,000, which she lost because of her desire to start her own restaurant business. The restaurant failed after six months and petitioner then obtained a job paying $350 per week, which she also voluntarily left. Under the circumstances, we conclude that Family Court's imputation of only $18,000 in income was, if anything, generous to petitioner despite her testimony that her current enterprise publishing a weekly newspaper provided her with a lesser income. We also conclude that Family Court acted within its discretion in declining to impute the benefit of a company vehicle which was made available to respondent and the value of a home provided to petitioner by her father and contributions made to petitioner's living expenses by her cohabitant (*see, Koczaja v Koczaja,* 195 AD2d 693, 695, *lv denied* 83 NY2d 756).

We agree with petitioner, however, that Family Court erred in its overall computation of the parties' combined parental income. We will make that computation now. First, we conclude that Family Court properly established respondent's employment income at the $95,000 salary he was earning at the time of the fact-finding hearing. Subtracting FICA and Medicare withholdings, which respondent indicates total $5,469, and

respondent's $258 weekly support obligation for another child (*see*, Family Ct Act § 413 [1] [b] [5] [vii] [D], [H]), leaves $76,115. Next, we agree with petitioner that capital gains are included within the statutory definition of income pursuant to Family Court Act § 413 (1) (b) (5) (i) or (ii) (*see*, *McFarland v McFarland*, 221 AD2d 983, 984) and that Family Court erred in omitting the gain realized on respondent's sale of his interest in Broome Hockey Associates. Subtracting the $117,000 initial investment from the $400,000 realized at the time of the sale leaves a net gain of $283,000. In addition, the principal portion of the monthly payments on the $250,000 note constitute realized gain and should have been included, together with the interest portion thereof and the certificate of deposit interest. We therefore compute petitioner's annualized income as follows: $76,115 + $283,000 + $60,829.20 (annual principal and interest on note [$5,069.10 x 12]) + $3,360 (interest on certificates of deposit* ) = $423,304.20. Adding petitioner's $18,000 of imputed income gives a combined parental income of $441,304.20, of which respondent's income represents 96%.

Based upon the foregoing, respondent's basic child support obligation on the first $80,000 of combined parental income is $251 per week ([$80,000 / 52] x .17 x .96). On income exceeding the $80,000 income cap (*see*, Family Ct Act § 413 [1] [c] [3]), however, the courts are not bound to apply the statutory percentage but may establish the child support obligation through application of the statutory percentage, the "paragraph (f)" factors, or a combination of the two (*see*, Family Ct Act § 413 [1] [c] [3]; [f]; *Matter of Cassano v Cassano*, 85 NY2d 649, 655; *Matter of Gluckman v Qua*, 253 AD2d 267, 270). We will consider the "paragraph (f)" factors now.

First, although respondent earns substantially more than petitioner, the income figures set forth above do not necessarily give a fair portrayal of the parties' respective financial situations. As previously stated, petitioner is not approaching her actual earning capacity and the greater part of respondent's "income" is in the form of a one-time capital gain, which has been reinvested (*see*, Family Ct Act § 413 [1] [f] [7]). In addition, petitioner's housing expenses are minimal and are being shared by her cohabitant (*see*, Family Ct Act § 413 [1] [f] [1]).

---

* We find no support in the record for Family Court's finding of certificate of deposit income in the amount of $12,000 per year. Rather, the only competent evidence on the issue was that respondent had certificates of $72,000 and $12,000 and that they earned interest at the rate of approximately 4%. Therefore, we compute annual interest at $84,000 x .04 or $3,360.

The child's overall physical health appears to be good, although there has been some expense for psychological counseling, which is being paid by respondent (*see*, Family Ct Act § 413 [1] [f] [2]), and the parties appear to have no educational needs of their own (*see*, Family Ct Act § 413 [1] [f] [6]). Further, while respondent's realization of a substantial gain on the sale of his interest in Broome Hockey Associates may have permitted the child to enjoy a higher standard of living had the parties remained married (*see*, Family Ct Act § 413 [1] [f] [3]), substantially all of the funds realized on the sale have been reinvested (and properly so) and the increase in child support as herein determined permits the child to enjoy an appropriately enhanced standard of living. We also note that a substantial sum had to be set aside for anticipated taxes on the capital gain (*see*, Family Ct Act § 413 [1] [f] [4]).

Notably, "although children must generally be permitted to share in a noncustodial parent's enhanced standard of living and a court is not permitted to make an award based solely on their actual needs" (*Matter of Gluckman v Qua, supra*, at 271; *see*, *Matter of Cassano v Cassano, supra*, at 653), we may consider the child's needs in determining an award of child support on income exceeding the $80,000 cap (*see*, *Matter of Gluckman v Qua, supra*, at 271-272). On this record, it appears that essentially all of the child's needs would be satisfied by an award of child support computed on the first $80,000 of combined parental income. We also agree with Family Court's conclusion that a lump-sum award of a percentage of the gain realized on respondent's sale of his interest in Broome Hockey Associates would inure primarily to petitioner's benefit and operate as a windfall to her (*see*, Family Ct Act § 413 [1] [f] [10]).

Based upon our consideration of the foregoing factors, we establish child support at $300 per week. Under all the circumstances, we are not persuaded to disturb Family Court's award of support add-ons.

As a final matter, we are not persuaded that Family Court abused its discretion in denying petitioner's application for counsel fees.

Mikoll, J. P., Peters, Carpinello and Graffeo, JJ., concur. Ordered that the order entered May 20, 1998 is modified, on the law and the facts, without costs, by increasing respondent's weekly child support obligation from $260 to $300, and, as so modified, affirmed. Ordered that the order entered June 15, 1998 is affirmed, without costs.