(January 3, 2002)

■ JOSEPH GOTTESMAN, M.D., Respondent, v ARLETTE C. GOTTESMAN, Appellant. [735 NYS2d 113] —Judgment, Supreme Court, New York County (Joan Lobis, J.), entered May 21, 1999, confirming an arbitration award rendered by a rabbinical tribunal (the Bais Din), which had resolved the financial issues in this matrimonial action, including an award of child support in the amount of $1,500 per month, modified, on the law and the facts, the matter remanded to the Supreme Court for an upward modification of the award of child support, and otherwise affirmed, without costs.

The parties were married in January 1992 and their only child was born in November 1992. Plaintiff husband thereafter commenced this action for divorce in May 1994 and in June 1994, Justice Lewis Friedman issued a pendente lite order directing that the husband pay $3,000 in monthly maintenance and $1,150 in monthly child support. In January 1995, the wife initiated arbitration proceedings before a Bais Din, after which a series of agreements were executed by the parties which, inter alia, defined the scope of the issues to be submitted to the arbitrators. The arbitration proceedings began in May 1995, after which the wife moved in the Supreme Court for an order holding the husband in contempt for violating the prior pendente lite order. The wife also maintained that she was coerced into, and did not consent to, arbitration.

The Supreme Court referred the wife's claims to a special referee and, when the matter came on for a hearing on March 7, 1996, the wife, in open court, withdrew her allegations regarding the validity of the arbitration agreements, with prejudice, and consented to have the Bais Din conclude the arbitration hearings on all the issues in accordance with the arbitration agreements.

The Bais Din thereafter issued a decision dated January 8, 1997, which, based on the husband's annual income of approximately $250,000, and the wife's annual income of approximately $28,000, awarded the wife, inter alia, $1,500 per month in child support. In rendering its decision, the tribunal noted that the award was appropriate in light of "the great expense of the child's religious school education as well as when considering the other factors set forth in the [Child Support Standards Act (CSSA)]."

The law is clear that child support issues are arbitrable but remain subject to judicial review, and may be vacated on public policy grounds, such as where the award is adverse to the best interests of a child (*Hirsch v Hirsch*, 37 NY2d 312, 315; *Hampton v Hampton*, 261 AD2d 362, 363).

In this matter, we find that the rabbinical tribunal, in applying the factors set forth in the CSSA for parental income over $80,000 (Domestic Relations Law § 240 [1-b] [f]), did not properly consider the best interests of the child, and her needs in view of the parties' marital standard of living (*Matter of Mitchell v Mitchell*, 264 AD2d 535, *lv denied* 94 NY2d 754; *Matter of Gluckman v Qua*, 253 AD2d 267, *lv denied* 93 NY2d 814), especially in view of the father's earning ability as contrasted with the mother's income. We believe the overriding public policy concern in all child support awards calls for a more appropriate amount to ensure the child's well being (*see, generally, Matter of Brescia v Fitts*, 56 NY2d 132, 141). Moreover, we also note that the cost of religious school does not justify the result rendered by the Supreme Court, which gives two thirds of the former family unit a mere 20% of the total family income. We, therefore, remand this matter to the Supreme Court to recalculate the amount of child support in view of the foregoing. Concur—Nardelli, J.P., Rosenberger, Ellerin and Wallach, JJ.

Rubin, J., dissents in a memorandum as follows:

It is apparent that the majority is uncomfortable with the amount of child support awarded in this proceeding and has embraced the notion that more is better; but by substituting its judgment for that of the arbitral tribunal, the majority contravenes the long-standing policy of this state favoring the resolution of disputes in arbitration. Furthermore, even upon review of a court ruling where public policy is not a concern, an award of support is a matter of discretion subject to reversal on the sole criterion of abuse in the exercise of that discretion. Having failed to demonstrate that the award of $1,500 a month threatens the child's welfare or that the discretion afforded by

statute has been abused, the majority has deviated from this Court's appellate function and intruded upon the exclusive prerogative of the arbitrators.

The issue before us is whether defendant wife has established any basis upon which to vacate the award she sought as the plaintiff in arbitration proceedings before a rabbinical tribunal, known as a "Bais Din" (CPLR 7511). The parties had been married a little more than two years when plaintiff husband commenced this action for divorce on or about April 27, 1994. It was defendant wife who initiated arbitration in January 1995. Anomalously, the record reflects that, in November 1995, the validity of the consent to arbitration was referred to a special referee on the wife's allegation that she was coerced into signing the consent to arbitrate (CPLR 7503). In any event, in a stipulation entered in open court on March 7, 1996, the parties, "after consultation with their respective attorneys," agreed to return to the Bais Din. Hearings were held on 11 separate occasions from May 1995 to May 1996, culminating in the award at issue, rendered January 8, 1997. Supreme Court confirmed the award (CPLR 7510), expressly finding that "the religious tribunal applied the Child Support Standards Act in reaching its determination as to the amount of child support."

As the majority has articulated no reason why the award is not in the best interests of the child, there is no basis to disturb its confirmation by Supreme Court. Unless offensive to public policy, an arbitration award, even one rendered in connection with a matrimonial action, is "impervious to judicial review" (*Hirsch v Hirsch*, 37 NY2d 312, 316). Judicial intervention in the arbitration process is only appropriate where the relevant public policy considerations "prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631).

Only with respect to matters of custody is judicial oversight permitted in the absence of a statutory basis (CPLR 7511). As this Court stated in *Sheets v Sheets* (22 AD2d 176, 178), "the best interest of the child is assured protection by this omnipresent judicial check against arbitration awards in custody matters attaining the unassailable finality of awards in other arbitrations." In *Schneider v Schneider* (17 NY2d 123, 127), the Court of Appeals duly recognized the "broad powers as to custody and support of children" conferred upon the courts by

Domestic Relations Law § 240. Nevertheless, the Court held that nothing in this provision operates "to change the well-settled rule that parties may agree to arbitrate their differences as to the amount of support money." (*Id.*) In *Hirsch v Hirsch* (*supra*, at 316), the Court of Appeals made clear that arbitration regarding "support money" encompasses disputes as to maintenance, support and maintenance or child support alone.

An award of child support may not ·be disturbed merely because the reviewing court, considering the matter de novo, might have arrived at a higher figure. Even upon review of a judicial award, that part of the award of child support attributable to the parties' income in excess of $80,000 is committed to the exercise of the court's discretion, subject to review only for abuse (*Matter of Cassano v Cassano*, 85 NY2d 649, 655). In the case of an award in arbitration, as we observed in *Sheets v Sheets* (*supra*, at 179), "What must be shown to evoke judicial intervention is that the award adversely affects the welfare and best interest of the child." To apply a lesser standard would subject every monetary award to attack "by a dissatisfied parent merely because it affected the child. Obviously every such award will have that effect" (*id.*). The operative question, therefore, is whether the award can "reasonably be deemed to have any substantial effect on the child's best interest and welfare" (*id.*).

The majority fails to state why the award of child support is inimical to the best interests of the parties' daughter, six years old at the time of this appeal. Rather, the majority simply speculates that, in reaching the figure of $1,500 a month, the rabbinical tribunal "did not properly consider the best interests of the child, and her needs in view of the parties' marital standard of living * * * especially in view of the father's earning ability as contrasted with the mother's income." That the arbitrators accorded greater significance to the "physical and emotional health of the child and his/her special needs and aptitudes" (Domestic Relations Law § 240 [1-b] [f] [2]) promoted by plaintiff's payment for her religious education than they accorded to the disparity in earnings ability of her parents (§ 240 [1-b] [f] [7]) does not, ipso facto, render their award an abuse of discretion. It certainly does not establish that an award of $1,500 a month represents any danger to the child's welfare. Finally, the arbitrators arrived at their award after extensive hearings and, contrary to the majority's assertion, specifically found that the sum awarded is consistent with the child's needs in view of the parties' standard of living prior to their

separation. The sparse record before us provides no basis for a contrary determination even if such an exercise were within this Court's discretion (*cf., Matter of Gluckman v Qua*, 253 AD2d 267, 270, *lv denied* 93 NY2d 814).

It is undisputed that defendant wife is self-supporting (*Hirsch v Hirsch, supra*, at 316) and that plaintiff is obligated to pay for the child's medical care and educational expenses. As required by the arbitration contract, the tribunal applied the Child Support Standards Act (Domestic Relations Law § 240 [1-b] [L 1989, ch 567]), setting forth their reasoning with regard to the amount determined by application of Domestic Relations Law § 240 (1-b) (c) (3) and making specific reference to the criteria set forth in section 240 (1-b) (f) concerning parental income in excess of $80,000. The award states: "The amount of child support awarded by us deviates from the amount which [plaintiff herein] might be required to pay pursuant to the C.S.S.A. We find, however, that this is appropriate when considering the great expense of the child's religious school education as well as when considering the other factors set forth in the C.S.S.A. We are of the opinion that the award of child support is sufficient to meet the needs of the child and is consistent with the parties *[sic]* pre-separation standard of living." There has been no demonstration, either before Supreme Court or on appeal, that the award of $1,500 a month represents any threat to the child's welfare so as to warrant this Court's remedial intervention to vacate the award in arbitration (*see, Matter of Mitchell v Mitchell*, 264 AD2d 535, 540, *lv denied* 94 NY2d 754 [all of child's needs satisfied by award computed on first $80,000 in combined parental income; child support established at $300 a week]).

Consideration of the merits of this controversy, including any limitation on the arbitral tribunal's power to determine the amount of child support, trespasses upon the exclusive province of the arbitrators (CPLR 7501; *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.*, 37 NY2d 91, 95; *Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 309). Furthermore, judicial intervention contravenes "the strong public policy of this State to favor the resolution of disputes in arbitration as a means of conserving scarce judicial resources" (*Bank of Tokyo-Mitsubishi v Kvaerner a.s.*, 243 AD2d 1, 9, citing *Rio Algom v Sammi Steel Co.*, 168 AD2d 250, *lv denied* 78 NY2d 853). Finally, by condoning defendant's tactics of first removing this matter from the courts by invoking her right to arbitration and then challenging the ensuing award, this Court has permitted defendant to protract the litigation by "playing one forum off

against the other," a practice we have consistently condemned (*Avon Prods. v Solow*, 150 AD2d 236, 238; *see also, Bank of Tokyo-Mitsubishi v Kvaerner a.s., supra*, at 9; *Hirschfeld Prods. v Mirvish*, 218 AD2d 567, 568, *affd* 88 NY2d 1054; *Koob v IDS Fin. Servs.*, 213 AD2d 26, 35-36).

Accordingly, the order confirming the arbitrators' award should be affirmed.