■ MELANIE A. MOSCHETTI, Appellant, v PETER J. MOSCHETTI, JR., Respondent. [716 NYS2d 802] —Rose, J. Appeal from a judgment of the Supreme Court (Williams, J.) ordering, *inter alia*, equitable distribution of the parties' marital property, entered June 1, 1999 in Saratoga County, upon a decision of the court.

The parties were married in November 1986 and this action for divorce was commenced in August 1997. At the time of trial, plaintiff was a registered nurse not employed in her profession, defendant was an attorney associated with a law firm, and the two children of the parties were 7 and 10 years old. Following trial, Supreme Court granted plaintiff a divorce and made findings of fact and law that, *inter alia*, granted plaintiff sole custody of the children with visitation to defendant, awarded plaintiff maintenance in the amount of $20,000 per year for three years followed by $15,000 per year for four additional years, and set defendant's child support obligation at $693.90 per week, a figure which includes 12.5% of his proportional share of the parties' combined income in excess of $80,000. These findings were incorporated into a judgment of divorce. This appeal by plaintiff ensued.

Plaintiff argues that the maintenance award should be increased, primarily in amount, because Supreme Court did not adequately set forth the requisite statutory factors (*see*, Domestic Relations Law § 236 [B] [6] [a]) and because the award does not overcome the great disparity in the parties' annual incomes, which Supreme Court found to be $6,000 for plaintiff and $250,000 for defendant. While the amount and duration of maintenance are set in the exercise of the trial court's sound discretion (*see, Petrie v Petrie*, 124 AD2d 449, *lv dismissed* 69 NY2d 1038), the court is constrained to consider certain statutory factors, such as the parties' standard of living and the needs and resources of the recipient spouse, and then set forth the reasons for its conclusions (*see*, Domestic Relations Law § 236 [B] [6] [a], [b]). However, a court's failure to explicitly identify the factors relied upon in determining maintenance can be overlooked where the findings and supporting

record permit this Court to make an informed review and confirm that appropriate factors were considered (*see, Butler v Butler*, 256 AD2d 1041, *lv denied* 93 NY2d 805; *Maczek v Maczek*, 248 AD2d 835; *Anglin v Anglin*, 148 AD2d 833).

Here, Supreme Court's findings of fact and conclusions of law evidence its awareness that the marital property to be distributed to plaintiff included a one-half interest in an IRA account valued at $331,525 and a one-half interest in the marital residence (*see*, Domestic Relations Law § 236 [B] [6] [a] [1]). In addition, defendant was required to maintain a $1,000,000 life insurance policy with plaintiff as the beneficiary until the children become emancipated. Supreme Court also considered the great disparity between the parties' present and future income capacities (*see*, Domestic Relations Law § 236 [B] [6] [a] [3]) and made findings as to plaintiff's contributions to the household during the course of the marriage (*see*, Domestic Relations Law § 236 [B] [6] [a] [8]). The record further reflects that plaintiff, who was 37 years old at the time of trial, is in good health (*see*, Domestic Relations Law § 236 [B] [6] [a] [2]), is a registered nurse presently licensed in New York and is capable of being self-supporting (*see*, Domestic Relations Law § 236 [B] [6] [a] [3], [4]). As the children are of school age, defendant will bear a pro rata share of child care expenses and plaintiff was seeking employment in her field at the time of trial, there is no discernable impediment to her return to full-time work within the term of the maintenance award (*see, Van Dyke v Van Dyke*, 273 AD2d 589, 594; *Saxton v Saxton*, 168 AD2d 767, 768). Given plaintiff's earning potential and the amount that she will receive through equitable distribution, we cannot conclude that Supreme Court abused its broad discretion in determining the amount or duration of maintenance.

Supreme Court did err, however, in deviating from the 25% guideline prescribed by the Child Support Standards Act (Domestic Relations Law § 240 [1-b]) and including only 12.5% of the parties' combined income in excess of $80,000 in its award of child support without adequately relating the pertinent statutory factors to the facts in the record. On combined income exceeding $80,000, the courts are not bound to apply the statutory percentage, but may establish the noncustodial parent's child support obligation through application of the statutory percentage, the factors set forth in Domestic Relations Law § 240 (1-b) (f) or some combination of the two (*see*, Domestic Relations Law § 240 [1-b] [c] [3]; *Matter of Mitchell v Mitchell*, 264 AD2d 535, 539, *lv denied* 94 NY2d 754; *see also, Matter of*

*Cassano v Cassano*, 85 NY2d 649, 655). In doing so, the trial court must set forth a record articulation for deviating or not deviating from the statutory guideline and relate that articulation to the statutory factors (*see, Matter of Gluckman v Qua*, 253 AD2d 267, 270-271, *lv denied* 93 NY2d 814; *Matter of Schmitt v Berwitz*, 228 AD2d 604; *see also, Matter of Jones v Reese*, 227 AD2d 783, 785 [Cardona, P. J., dissenting], *lv denied* 88 NY2d 810).

Here, Supreme Court first recognized the large and continuing disparity between the parties' incomes, but stated that "to simply track the child support standards act guidelines in this case would, under all the circumstances, be inappropriate." Supreme Court then recited its findings that defendant earns substantially more than plaintiff, that the children are in "relatively good" physical and mental health, and that the time the children will spend with defendant is "very near" the time that they will spend with plaintiff. Supreme Court next determined the parties' combined income, applied the statutorily prescribed 25% to that income up to the $80,000 and included 12.5% of that income over $80,000 in calculating the amount of child support that defendant was obligated to pay (*see*, Domestic Relations Law § 240 [1-b] [b] [3] [ii]; [c]; *Bast v Rossoff*, 91 NY2d 723, 726-727). Finally, the court declared that in making this award, it considered the additional factors of the standard of living that the children would have enjoyed had the marriage not been dissolved and the parties' nonmonetary contributions.

Although Supreme Court cited several statutory factors (*see*, Domestic Relations Law § 240 [1-b] [f] [1]-[3], [5], [7]), our review of those that have corresponding findings of fact does not reveal why the court applied 12.5% to the parties' excess income. Rather, other than its finding as to the amount of time the children will spend with defendant under the court-directed visitation schedule, the findings cited by Supreme Court justify application of a greater percentage. Even considering plaintiff's anticipated income from full-time employment as supplemented by the maintenance and child support currently payable by defendant, it is clear that the wide gap in income here will prevent plaintiff from providing the children with a home and a standard of living to which Supreme Court found that they were accustomed during the marriage and could have expected to continue had the marriage not been dissolved (*see, Zaremba v Zaremba*, 237 AD2d 351).

Only Supreme Court's finding that the children's time with defendant will be "very near" that spent with plaintiff suggests

a countervailing basis for this award. However, a closer examination of the ordered visitation schedule reveals that it is not significantly greater than what may be considered "usual" visitation (*see, Bast v Rossoff, supra,* at 729, n 3). In addition, we note that there is neither proof nor a finding in the record that defendant will incur any extraordinary expenses or that plaintiff's expenses will be diminished due to the children's visitation with defendant (*see,* Domestic Relations Law § 240 [1-b] [f] [9]; *Borowicz v Mancini,* 256 AD2d 713, 714). Accordingly, we cannot view this finding as justification to lessen the percentage. In the absence of any such countervailing basis, the disparity in the financial resources of the parties and the need to avoid a drastic change in the children's standard of living justify application of a greater percentage to the parents' combined income (*see, Matter of Brefka v Dobies,* 271 AD2d 876, 878, *lv denied* 95 NY2d 759).

Accordingly, we find that the percentage to be applied to the parties' income in excess of $80,000 should be set at 20%, and 20% of the excess combined parental income of $163,250 is $32,650 which, when added to 25% of the combined income up to $80,000 ($20,000), yields a total of $52,650. As defendant earns 89.3% of the combined income, his child support obligation is found to be $47,016 per year or $904.16 per week.

Lastly, Supreme Court correctly found that defendant's association with his law firm was that of an employee rather than an independent contractor and, therefore, he has no separately distributable interest in a law practice.

Peters, J. P., Carpinello and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as fixed defendant's child support obligation; defendant's child support obligation is increased from $693.90 per week to $904.16 per week; and, as so modified, affirmed.