■ ASHOK GANDHI, Respondent-Appellant, v RAJNI K. GANDHI, Appellant-Respondent. [724 NYS2d 541] —Mercure, J. P. Cross appeals from a judgment of the Supreme Court (Can-

field, J.) ordering, *inter alia*, equitable distribution of the parties' marital property, entered July 14, 1999 in Rensselaer County, upon a decision of the court.

The parties were married on November 8, 1991. They have one child, a daughter, born in 1996. The parties separated in October 1997, and plaintiff commenced this action for divorce in July 1998. A bench trial was held in January 1999 and Supreme Court ultimately granted defendant judgment on her counterclaim for a divorce based upon cruel and inhuman treatment, distributed the parties' marital property, granted defendant custody of the parties' child in accordance with a prior order of Family Court and required plaintiff to pay child support and past and future child care expenses. The parties cross-appeal, with defendant primarily challenging Supreme Court's denial of her application for maintenance and its setoff of the value of her paralegal degree against the value of plaintiff's license as a certified public accountant (hereinafter CPA), and plaintiff contending that Supreme Court erred in its finding that plaintiff had committed marital waste, in its award of retroactive child care expenses and mortgage arrears, and in its asserted failure to categorize certain gifts from defendant as separate property and to credit plaintiff with the full amount of child support payments made pursuant to a May 1998 Family Court order. We now affirm.

We shall first address defendant's appeal and her assertions of error concerning the classification, valuation and distribution of plaintiff's CPA license and defendant's paralegal degree. Although we do not approve of Supreme Court's resolution of these thorny issues with its unsupported conclusion that the respective marital portions of the license and degree "effectively cancel each other out," we reach the same result by virtue of our determination that under all the circumstances, it would be inequitable to make any distribution of the marital portion of either the CPA license or paralegal degree.

The record establishes that, while living in his native India, plaintiff received considerable formal education in business administration and accounting, was qualified as a "chartered" accountant, which he indicates is India's equivalent of a CPA license, and worked in that capacity for a number of years. After moving to New York, plaintiff applied for licensure as a CPA. An evaluation performed by World Education Services concluded that plaintiff's coursework in India was equivalent to 188 semester hours of undergraduate study and 24 semester hours of graduate study and that plaintiff had obtained the equivalent of a Bachelor's degree and one year of graduate

study in business administration, as well as a Bachelor's degree in accounting. Based upon that evaluation, the Education Department determined that the education component of plaintiff's application could be fulfilled with only two additional courses in Federal taxation and business law, which plaintiff was able to complete by attending evening classes at an area community college while he remained employed as a full-time accountant. His employer paid the tuition. Plaintiff then took and passed the CPA exams in May 1994. After fulfilling the work experience requirement for licensure by merely continuing his existing employment, plaintiff obtained his CPA license in May 1997.

At trial, defendant had an economist testify as to the value of plaintiff's CPA license, which he established at $440,742.60 by comparing the present value of plaintiff's expected work life earnings as a CPA with those of an accountant not possessing a CPA license. Although we seriously question much of the analysis employed by defendant's economist, which tended to ignore a great many of the unique aspects of plaintiff's circumstances, including his considerable prior experience as an accountant, his actual earnings prior to obtaining his CPA license and the fact that a considerable amount of overtime pay substantially inflated his income following the CPA licensure, we agree with defendant that some part of the value of plaintiff's CPA license was attributable to activities conducted during the marriage and, as such, technically constituted marital property (see, McSparron v McSparron, 87 NY2d 275, 281-282; McAlpine v McAlpine, 176 AD2d 285, 286).

The more compelling question, however, is whether, under all the circumstances, it would be equitable to distribute any portion of that marital property to defendant. In the exercise of our factual review power, we conclude that the evidence adduced at trial militates against such a distribution. First, it appears that, considering the extent of plaintiff's premarriage education and experience, substantially all of the effort that went into plaintiff's attainment of his CPA license was expended prior to the marriage (see, McAlpine v McAlpine, supra, at 286; McGowan v McGowan, 142 AD2d 355, 362-363). Second, on this record, we find little credible evidence to support a finding that defendant contributed in any meaningful way to such of plaintiff's efforts as were made during the marriage (see, Small v Small, 227 AD2d 949; Duspiva v Duspiva, 181 AD2d 810, 811, lv denied 80 NY2d 752). Notably, it does not appear that either the coursework or the CPA examination caused plaintiff substantial difficulty, and he testified without

contradiction that he took the exams on his own, without any kind of preparatory or "coaching" classes and that he required no assistance, financial or otherwise, from anyone to pass them (see, Duspiva v Duspiva, supra, at 811). Although there can be no question that defendant made overall contributions to the marriage through her employment and the performance of household tasks such as cooking, cleaning and laundry, it does not appear that any additional effort on defendant's part can be reasonably attributed to plaintiff's attainment of the CPA license, as distinguished from the full-time employment he was already engaged in at the time. To the contrary, it strikes us that plaintiff's attainment of the license was primarily the product of his own innate intelligence, educational and professional efforts that he made prior to the marriage, as well as his own capacity for hard work.

The circumstances surrounding defendant's attainment of her paralegal degree present similar difficulties. According to defendant's uncontradicted testimony, her decision to pursue paralegal training was prompted by her inability to find suitable employment with her existing education, i.e., a Bachelor's degree in communications obtained at a New York public college. All of defendant's paralegal education took place after plaintiff vacated the marital premises, but approximately one half of that education took place prior to the commencement of the action for divorce, which represents the cutoff date for acquisition of marital property (see, Domestic Relations Law § 236 [B] [1] [c]). Although plaintiff appears not to have provided defendant with any particular encouragement or assistance during her one-year course of paralegal study, he was providing her with maintenance, child support and other financial assistance at the time. We conclude that 50% of the value of defendant's paralegal degree constitutes marital property but that, under all the circumstances, it would be inequitable to distribute any part of that marital property to plaintiff.

Turning now to the issue of maintenance, we agree with defendant that Supreme Court erred in failing to give adequate consideration to the maintenance factors set forth in Domestic Relations Law § 236 (B) (6) (a), as required by Domestic Relations Law § 236 (B) (6) (b). Nonetheless, engaging in that analysis ourselves, we reach the same conclusion.

At the time of trial, plaintiff's gross earnings from employment as a CPA were $59,400. Defendant had just recently obtained employment as a paralegal at a starting salary of $23,000. Withheld from plaintiff's salary were FICA of $4,544, State and Federal income taxes of approximately $10,500, and

child support of $9,326. In addition, the judgment of divorce required plaintiff to pay day care expenses of $5,250, leaving him with a disposable income of approximately $30,000. Supplementing defendant's salary with the child support paid by plaintiff, and taking into account that plaintiff is paying nearly the entire cost of the child's day care, leaves the parties on an approximately equal financial footing. Under the circumstances, we conclude that the parties' marital standard of living, their respective incomes, property and present and future earnings capacity, the presence of the child in defendant's home and the tax consequences to each party (see, Domestic Relations Law § 236 [B] [6] [a] [1], [3], [6], [7]) do not favor an award of maintenance.

In addition, based upon the evidence adduced at trial, we find that both parties are already capable of supporting themselves and that neither sustained a reduced or lost lifetime earning capacity as a result of having forgone or delayed education, training, employment or career opportunities during the marriage (see, Domestic Relations Law § 236 [B] [6] [a] [2], [5], [8]). Contrary to defendant's assertion, medical evidence concerning any injuries she sustained related solely to her allegations of cruel and inhuman treatment, and there is no evidence in the record to support the current contention that defendant "has sustained permanent injuries to her body * * * [which have] had an effect on her ability to earn income." Further, plaintiff's wasteful dissipation of marital property and transfers for less than fair consideration (see, Domestic Relations Law § 236 [B] [6] [a] [9], [10]) have already been compensated for in Supreme Court's judgment.

On his appeal, plaintiff challenges so much of Supreme Court's judgment as required him to reimburse defendant for the full cost of day care expenses that she incurred from January 1, 1998 through February 16, 1999, and also contends that the requirements that he pay $4,665 in mortgage arrears and $6,500 in counsel fees is duplicative of the requirement that he reimburse defendant for one half of the $14,000 indebtedness that she incurred during the pendency of the action. On the present record, we are unable to determine the merit of plaintiff's contentions and therefore conclude that he has failed to satisfy his burden of showing that the payments were improperly ordered (see, Judson v Judson, 255 AD2d 656, 658). The balance of plaintiff's contentions merely raise issues of credibility, which Supreme Court resolved against plaintiff in the proper exercise of its fact-finding authority, or have been considered and found to be lacking in merit.

Peters, Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.