■ Virginia D. Smith, Respondent, v Gary W. Smith, Appellant. [778 NYS2d 188]—

Peters, J. Appeals from an order and judgment of the Supreme Court (McNamara, J.), entered January 22, 2003 and March 10, 2003 in Albany County, ordering, inter alia, equitable distribution of the parties' martial property, upon a decision of the court.

The parties were married in 1988 and have three children (born in 1989, 1991 and 1996). In July 2001, plaintiff commenced this action for a divorce, which resulted in a January 2003 order based, in part, on the parties' stipulation. Supreme Court distributed the marital property, determined defendant's child support obligation and declined to award either maintenance or counsel fees to either party. The judgment of divorce, which was entered thereafter, sets forth, among other things, the equitable distribution award. Defendant now appeals, specifically focusing on the unequal distribution of the marital estate and the failure to have been awarded maintenance and counsel fees.*

Supreme Court typically resolves equitable distribution issues in the exercise of its discretion after examining the circumstances of the case and the pertinent statutory factors (*see* Domestic Relations Law § 236 [B] [5] [d]; *Stuart v Stuart*, 275 AD2d 533, 535 [2000]; *Turner v Turner*, 145 AD2d 752, 753 [1988]). Such factors include consideration of the income and property acquired by the parties during the marriage. Contributions made by both spouses, "including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party" are relevant (Domestic Relations Law § 236 [B] [5] [d] [6]). The length of the marriage, the parties' health, and whether there will be an award of maintenance are also taken into account (*see* Domestic Relations Law § 236 [B] [5]

---

* Defendant appeals from the order setting forth equitable distribution as well as the final judgment. However, entry of the judgment of divorce requires our dismissal of the intermediate order (*see Finn v Finn*, 277 AD2d 834, 835 n 2 [2000]).

[d]); Supreme Court must set forth the factors it considered and state the reasons for its determination (*see O'Brien v O'Brien*, 66 NY2d 576, 589 [1985]; *Cappiello v Cappiello*, 66 NY2d 107, 110 [1985]; *Rosenkranse v Rosenkranse*, 290 AD2d 685, 686 [2002]). While we acknowledge that the distribution need not be equal (*see Lincourt v Lincourt*, 4 AD3d 666, 666-667 [2004]), in keeping with the underpinnings of the equitable distribution legislation which views a marriage as an economic partnership (*see O'Brien v O'Brien, supra* at 585), we are of the view that "where both spouses contribute equally to a marriage of long duration, a division of marital assets should be made that is as equal as possible" (*Strang v Strang*, 222 AD2d 975, 977 [1995]; *see Stuart v Stuart, supra* at 535).

When these parties first married, plaintiff had graduated from law school and passed the bar examination but had not yet been admitted to the practice of law; defendant was employed as a correction officer. Both earned approximately $30,000 per year. Thereafter, their incomes became quite disparate. Plaintiff became a partner in a law firm earning approximately $94,500 a year by the time this action was commenced, while defendant earned approximately $37,000 a year until March 1996, when he resigned after being arrested for marihuana possession and use. At such time, defendant was already on disability from his employment. He was not convicted of any crime or fired by his employer. Rather, the parties made a joint decision to have him resign so that he could receive his full pension and assume full-time care for their three young children. By October 1997, defendant had returned to full-time employment, earning approximately $25,000 per year.

Throughout the marriage, the parties divided the activities and duties with regard to raising their three young children. When defendant was a correction officer, he worked the 3:00 P.M. to 11:00 P.M. shift while plaintiff generally worked from 8:30 A.M. to 4:30 P.M. According to defendant, he woke up early each morning to make the children breakfast and assist in the children's care while plaintiff got ready for work. After plaintiff left for the day, he assumed full-time care, which included cleaning, preparing lunches, changing diapers and preparing dinner. Plaintiff would pick up the children from daycare on her way home from work and continue the household routines until the children were put to bed. Plaintiff would do the grocery shopping and weekly cleaning while defendant would do the day-to-day chores. During the 1½ years of defendant's unemployment, the parties ceased using outside childcare since defendant assumed full-time care.

Despite these facts and the length of the marriage, Supreme Court found that "the efforts of either party are not a significant consideration in resolving the issues presented." We disagree. Although defendant did not forego any educational or work-related goals during the course of this marriage, plaintiff's career did, in fact, flourish. Notwithstanding plaintiff's testimony that her hours remained relatively stable throughout the marriage, we find it improper for Supreme Court to have ignored defendant's noneconomic contributions that, in some respects, enabled plaintiff to achieve her goal of becoming a partner in her law firm. We further find that when balancing the requisite factors in reaching its determination regarding the equitable distribution of the marital property, Supreme Court unduly emphasized defendant's possession and use of marihuana in 1996.

As this record is sufficiently developed to allow us to substitute our determination for that of Supreme Court in the interest of judicial economy (*see Winnie v Winnie*, 229 AD2d 677, 679 [1996]), we shall do so. Recognizing this 14-year marriage, the significant economic and noneconomic contributions made by each and the parties' youth and good health, a distribution of 50% to plaintiff and 50% to defendant better reflects their economic partnership (*see O'Brien v O'Brien, supra* at 585).

An award of maintenance is also subject to Supreme Court's exercise of its discretion after its consideration of the relevant statutory factors (*see* Domestic Relations Law § 236 [B] [6]; *Lincourt v Lincourt, supra* at 667; *Smith v Smith*, 1 AD3d 870, 872 [2003]; *Majekodunmi v Majekodunmi*, 309 AD2d 1024, 1025 [2003]; *Bemis v Bemis*, 305 AD2d 739, 740 [2003]). We find no error in Supreme Court's failure to make an award of maintenance to defendant, especially in light of our modification of the equitable distribution award (*see* Domestic Relations Law § 236 [B] [6] [a] [1]). With Supreme Court properly considering the age and health of the parties, the duration of the marriage, the ability of each to be self-supporting and the fact that defendant did not delay or forego education, training or employment or other career opportunities during the marriage, the determination will remain undisturbed (*see Atkinson v Atkinson*, 289 AD2d 907, 908-909 [2001]; *Gandhi v Gandhi*, 283 AD2d 782, 785-786 [2001]; *Van Dyke v Van Dyke*, 273 AD2d 589, 594 [2000]). Defendant's remaining challenge to Supreme Court's decision concerning counsel fees has been examined and found to be lacking in merit.

Mercure, J.P., Spain, Carpinello and Kane, JJ., concur. Ordered

that the appeal from the order entered January 22, 2003 is dismissed, without costs. Ordered that the judgment entered March 10, 2003 is modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff 65% of the marital assets and defendant 35% of the marital assets; award plaintiff 50% of the marital assets and defendant 50% of the marital assets; and, as so modified, affirmed.