◼ Evelyn N. Hammack, Appellant-Respondent, v David B. Hammack, Respondent-Appellant. [800 NYS2d 770]—

Spain, J. Cross appeals from a judgment of the Supreme Court (Dawson, J.), entered September 18, 2003 in Clinton County, ordering, inter alia, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in 1976. Defendant, then a board-certified radiologist, joined a radiology group in the City of Plattsburgh, Clinton County, where he is now a partner. Plaintiff was a registered nurse and earned a nurse practitioner license after the marriage. The parties have four children who, at the time of the commencement of this action in 1995, ranged from 3 to 12 years of age. Presently, the youngest is a teenager and the oldest is a senior in college. After the children were born, plaintiff primarily cared for them, working enough to maintain her skills and license, but not enough to earn a significant salary at any point during the marriage.

Plaintiff commenced this divorce action on the ground of cruel and inhuman treatment. Defendant answered and counterclaimed, asserting like grounds. After years of litigation, including a trial, Supreme Court granted each of the parties a divorce and ordered, among other things, maintenance, child support and equitable distribution. The parties now cross-appeal from Supreme Court's judgment.

Initially, we agree with plaintiff that modification of defendant's support obligation is necessary. Supreme Court applied the percentages set forth in the Child Support Standards Act (hereinafter CSSA; *see* Domestic Relations Law § 240 [1-b]) to determine defendant's child support obligation on the first $80,000 of the parties' combined child support income (*see* Domestic Relations Law § 240 [1-b] [c]). However, where, as here, the combined parental income (*see* Domestic Relations Law § 240 [1-b] [c] [1]) is greater than $80,000, Supreme Court must

also determine what amount, if any, of that excess income will be designated as part of the child support obligation by considering the factors listed in Domestic Relations Law § 240 (1-b) (f) (*see* Domestic Relations Law § 240 [1-b] [c] [3]; *Holterman v Holterman*, 3 NY3d 1, 10-15 [2004]; *Matter of Cassano v Cassano*, 85 NY2d 649, 653 [1995]). If the court finds, in its discretion, that strict application of the statutory percentages to the combined parental income in excess of $80,000 would render the noncustodial parent's share "unjust or inappropriate," deviation from that formula is appropriate (*see* Domestic Relations Law § 240 [1-b] [f]; *Cassano v Cassano, supra* at 655).

Here, if the statutory formula were strictly applied to the total combined parental income, defendant's obligation would be $103,002.[1] Supreme Court appropriately applied the statutory percentage to the first $80,000, fixing defendant's initial support obligation at $22,568.[2] The court then tacked on an additional $8,000 per year (to be used for the limited purpose of contributing to the hockey costs for two of the children), thus making defendant's total child support obligation about $30,000 per year, which is approximately $73,000 less than that which a strict application of the statutory formula would call for.[3]

Although Supreme Court appropriately articulated its reasons for deviating from the statutory percentages with regard to the

---

**1.** We find that Supreme Court erred in deducting $86,562—plaintiff's share of defendant's interest in the radiology practice—from defendant's income for child support purposes, inasmuch as distributive awards are not deductible (*see* Domestic Relations Law § 240 [1-b] [b] [5] [vii]; *Holterman v Holterman, supra* at 10). Accordingly, defendant's child support income in 2001 should have been fixed at $331,191. Plaintiff's child support income for 2001 was properly determined to be $33,934. Thus, defendant's support obligation applying the statutory formula is calculated as follows: (1) defendant's income ($331,191) + plaintiff's income ($33,934) = total combined parental income ($365,125); (2) statutory child support percentage (31%) × total combined parental income ($365,125) = total child support obligation ($113,189); (3) defendant's income ($331,125) = 91% of the total combined parental income; (4) 91% × total child support obligation ($113,189) = defendant's share of the annual child support obligation ($103,002) (*see Matter of Gluckman v Qua*, 253 AD2d 267, 273 [1999], *lv denied* 93 NY2d 814 [1999]).

**2.** Applicable child support percentage (31%) × $80,000 = child support obligation ($24,800); defendant's share (91%) × $24,800 = $22,568.

**3.** Defendant was also ordered to continue paying his proportionate share of up to $23,000 per year for the college expenses of the oldest child, his share of college expenses for the other three children up to an amount equal to tuition, room and board at the State University of New York, up to $6,000 per year for private school expenses for two of the boys, and his share of medical insurance and the cost of unreimbursed health related expenses for all of the children.

amount of combined income in excess of $80,000 (*see Cassano v Cassano, supra* at 655), in our view, the resultant obligation is insufficient. Although the court accurately observed that the family's lifestyle was not lavish or extravagant, our review of the record clearly indicates that it was substantially more comfortable than that which would be permitted by the support obligation set forth by the court. While we would agree with Supreme Court that a $103,000 support obligation—based on a strict application of the combined parental income—appears to be manifestly unjust and inappropriate, we also find this to be true of a $30,000 support obligation where the noncustodial parent earns in excess of $300,000 per year.

Applying the facts in this case to the factors found in Domestic Relations Law § 240 (1-b) (f), we find that while the financial resources of the parents had for the most part been equalized as of the time the judgment was rendered, defendant's financial resources will continue to grow, increasing the disparity in the parties' incomes. Further, in its attempt to maintain each of the children's preseparation standard of living (pre-1995), Supreme Court overlooked their increasing needs as they grow older (*see Matter of Barrett v Barrett*, 281 AD2d 799 [2001]), as well as their entitlement to share in their father's post-2003 standard of living. Under these circumstances, we find that a child support percentage of 12% of the combined parental income which exceeds $80,000 would be more appropriate (*see id.* at 802-803; *Matter of Gluckman v Qua*, 253 AD2d 267, 272 [1999], *lv denied* 93 NY2d 814 [1999]; *compare Moschetti v Moschetti*, 277 AD2d 838, 839-841 [2000]). Thus, defendant's total annual child support obligation should be increased to $4,475 per month.[4] The additional $8,000 per year for hockey costs should be terminated. The remainder of Supreme Court's judgment with regard to the costs involved in the children's educational expenses and healthcare expenses should remain unchanged.[5] The foregoing adjustments shall be awarded retroactively in accordance with the CSSA from the date of commencement of the divorce action (*see Carlson-Subik v Subik*, 257 AD2d 859, 861 [1999]; *Koczaja v Koczaja*, 195 AD2d 693, 693 [1993], *lv denied* 83 NY2d 756

---

4. The combined parental income in excess of $80,000 is $285,125 ($365,125 − $80,000); $285,125 × 12% = $34,215 is the child support obligation for the excess income; defendant's portion (91%) × $34,215 = $31,136; his initial child support obligation ($22,568) + $31,136 = $53,704 per year or $4,475 per month.

5. It should be noted that Supreme Court set defendant's pro rata share of educational and healthcare expenses at 88%, however, due to the recalculation of his child support income, his portion of these expenses should be increased to 91%.

[1994]; *Lauria v Lauria,* 187 AD2d 888, 889 [1992]), reduced by the amounts paid to date in accordance with the order herein, including the hockey allowance, as well as any moneys paid pursuant to any temporary child support order, including the shelter allowance and activities award (*see Lauria v Lauria, supra* at 889).

We also conclude that Supreme Court should have required defendant to reimburse plaintiff for one half of the payments that she made on the parties' home equity loan during the pendency of this action. Despite defendant's contention that plaintiff controlled the rental property during the pendency of the action and failed to rent it to full capacity, we find that the entire home equity loan should be considered marital debt and "borne equally" by the parties, as it was obtained during the parties' marriage and was primarily utilized to purchase property jointly owned by the parties (*Corbett v Corbett,* 6 AD3d 766, 768 [2004]; *see Spenello v Spenello,* 274 AD2d 822, 825 [2000]; *King v King,* 258 AD2d 717, 719 [1999]). On the other hand, given plaintiff's control over the rental property, we discern no abuse of discretion in Supreme Court's decision not to compensate plaintiff for the relatively inconsequential $14,000 that she spent over a period of approximately seven years in connection with losses on the property.

Additionally, certain stipulations made by the parties appear to have been inadvertently overlooked by Supreme Court. Specifically, the parties agreed that amounts contained in the parties' Adirondack Bank joint account ($19,316) would be charged to defendant in equitable distribution, and that funds contained in the Paine Webber Resource Management account in plaintiff's name ($6,998) would be charged to her in equitable distribution. The equitable distribution should be recalculated to include these two accounts.

Next, we reject defendant's assertion that plaintiff's marital fault and misconduct during the pendency of this action were so egregious that Supreme Court should have taken such misconduct into consideration in the equitable distribution of the assets of this long-term marriage (*see O'Brien v O'Brien,* 66 NY2d 576, 589-590 [1985]; *Newton v Newton,* 246 AD2d 765, 766 [1998], *lv denied* 91 NY2d 813 [1998]; *Hopper v Hopper,* 103 AD2d 911, 912 [1984]). Likewise, we find no merit in the parties' contentions with respect to Supreme Court's maintenance award. Where, as the court found, the recipient spouse is healthy, able to rejoin the work force, has not foregone education, has other financial resources, and did not enjoy a lavish or extravagant lifestyle during the marriage, a minimal award of

maintenance is not an abuse of discretion (*see Smith v Smith*, 8 AD3d 728, 731 [2004]; *Garruto v Garruto*, 290 AD2d 872, 873 [2002]; *Moschetti v Moschetti, supra* at 838-839; *Blechman v Blechman*, 234 AD2d 693, 695 [1996]).

We also reject defendant's contention that Supreme Court should have imputed a higher income to plaintiff; the record demonstrates that her part-time work schedule was initially agreed to by the parties and continued for the benefit of the children. Further, given plaintiff's contributions to defendant's career, though "modest" in nature, we reject the parties' contentions that Supreme Court abused its discretion in awarding her 25% of the value of his interest in the radiology practice (*see Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]; *Corbett v Corbett, supra* at 767). Finally, we reject plaintiff's assertion that the amount of counsel fees awarded to her was unfair or an abuse of discretion (*see* Domestic Relations Law § 237 [a]; *Newton v Newton, supra* at 767-768; *Strang v Strang*, 222 AD2d 975, 979 [1995]).

In reaching this decision, we have considered the parties' remaining contentions.

Cardona, P.J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) directing that defendant's portion of the combined parental income for child support purposes is 91%, (2) directing defendant to pay child support in the amount of $4,475 per month, (3) directing that defendant reimburse plaintiff for 50% of the payments plaintiff made on the home equity loan during the pendency of this action, (4) recalculating the equitable distribution by taking into consideration the stipulation of the parties with respect to the rental income account in the Adirondack Bank and the Paine Webber Resource Management account, and (5) terminating the award of $8,000 per year for hockey expenses; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.