■ MICHAEL A. MAIRS, Respondent, v CAMILLE MAIRS, Appellant. [878 NYS2d 222]—

Kavanagh, J. Appeal from a judgment of the Supreme Court (Hall, J.), entered January 3, 2008 in Saratoga County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in 1981 and have seven children. Plaintiff (hereinafter the husband) is an ophthalmologist with his own private practice while defendant (hereinafter the wife) is a tenured math professor employed at the Community College of Philadelphia. In 2002, the husband commenced this action for divorce and, prior to trial, the parties reached a partial stipulation resolving some, but not all, of the issues that divided them. Among those that remain were the degree to which the wife should share in the husband's medical practice and medical license, the amount and duration of maintenance, the value of each party's educational degree, as well as the husband's medical license, and the amount to be paid by the parties for the support of their children. The wife also sought payment by the husband of the fees charged by her counsel and the expert witness, as well as an order extending the husband's obligation to share in the payment of the children's numerous extracurricular activities. After a three-day trial, Supreme Court issued a judgment that, among other things, granted the husband a divorce and ordered him to pay the wife 15% of the value of his medical license and medical practice.[1] It also directed the husband to pay $400 per week in maintenance to the wife for seven years, child support in the amount of $1,260 per week, $18,000 of the wife's counsel's fees, 50% of the expert witness fees, and a portion of the college expenses incurred by the parties' eldest child. Finally, it required the husband, as a guarantee against his obligations under the judgment, to maintain a $200,000 life insurance policy with the wife listed as the primary beneficiary. The wife now appeals.

The wife takes issue with almost every aspect of Supreme Court's decision and, in particular, claims that in its judgment the court failed to fully take into account the sacrifices and

1. Supreme Court found that the value of the marital portion of the wife's Master's degree was $56,000 while the marital portion of the husband's Bachelor's degree and medical license had a total value of $1,493,000. The court then determined that each party was entitled to 15% of the value of these assets, resulting in a net award to the wife of $215,550.

contributions she made during the parties' 20-year marriage that, in her view, served to provide the husband with an opportunity to obtain his medical license and develop a thriving medical practice. The husband, while acknowledging that his medical license and practice are, to a degree, marital assets, claims that each was acquired as the direct result of his individual efforts and that his wife had little to do with his having obtained them.

In deciding the extent to which a spouse should share in the value of a marital asset, among the factors to be considered are the length of time the parties were married, their respective age and health, the ability of each to earn an income now and in the future, any direct or indirect contributions made by the nontitled spouse in the effort to obtain the asset, the asset's value and the degree to which it appreciated during the marriage and any tax consequences that will occur upon the assets distribution (*see* Domestic Relations Law § 236 [B] [5] [d]; *Smith v Smith*, 8 AD3d 728, 729 [2004]). Initially, we note that such decisions are generally left to the exercise of the trial court's sound discretion and will not, as a general rule, be disturbed if, as rendered, they properly account for all of the relevant statutory factors. However, we have the authority to conduct a broad review of any such award (*see Carman v Carman*, 22 AD3d 1004, 1006 [2005]; *Roffey v Roffey*, 217 AD2d 864, 866 [1995]).

On the facts presented, we are of the view that the wife is entitled to more than 15% of the value of the husband's license to practice medicine and his medical practice. We reach this conclusion by noting that, in particular, during this long-term marriage, the husband not only successfully completed his undergraduate studies and attended medical school, he also earned his medical degree and completed both his internship and residency, after which he was able to establish a successful medical practice. While the husband pursued his medical career, the wife not only gave birth to the parties' seven children, but cared for them, managed the household and earned a salary that, for a time, was the principal source of the family's income. She relocated the family from Utah to Philadelphia and later to New York for the express purpose of allowing the husband to pursue his medical studies and obtain his medical license. When the husband entered private practice, the wife, in addition to her maternal obligations, continued to work—commuting on a regular basis to Philadelphia—and managed the practice, assuming the responsibility for the preparation of all invoices and

the payment of all bills.[2] Given these circumstances, we find that the wife's contributions to her husband's medical career were both meaningful and significant and, as such, she is entitled to 25% of the value of his medical license, as well as his medical practice (*see Carman v Carman*, 22 AD3d at 1006; *Brough v Brough*, 285 AD2d .913, 914 [2001]).

While Supreme Court placed a value on the husband's educational degrees at $1,493,000, it adopted the opinion of the expert retained by the parties that the practice had a value of $12,000 and that the wife's distributive share amounted to $1,800. The expert, while acknowledging that the practice annually had gross revenues in excess of $500,000, initially placed its value at $93,000, after allowing for a full discount on the total amount alleged by the husband to be owed on a loan made to the practice by a local hospital. The expert then reduced that amount to account for the tax implications that would occur if the practice were sold. While we accept Supreme Court's determination that the tax impact generated by the sale of the practice was fairly considered in this valuation, we do not agree that the full amount of the loan—$190,830—should be included in determining the practice's fair market value. In that regard, we note that in the 12 years that this debt has been in existence, not one payment has been made against its principal and the promissory notes evidencing the existence of this legal obligation only amount to $104,000.[3] As a result, we find that while it was appropriate to consider this loan as a liability to be counted against the value of the practice, the amount used to discount its value should be that represented by the face value of the promissory notes—$104,000 (*see Charland v Charland*, 267 AD2d 698, 700-701 [1999]). Given that the expert has acknowledged reducing his estimate of the practice's value by the full amount claimed to be owed on this loan, the value of the practice for distributive purposes should be increased by $86,830 to $98,830, with the wife receiving a 25% distributive share.[4]

We find no abuse of discretion in Supreme Court's imposition of a 4.2% interest rate imposed on the amount the husband owes the wife for her share of the marital assets. "[T]he man-

---

**2.** The wife left for Philadelphia after dinner on Sunday evening and returned home to New York on Tuesday afternoon.

**3.** The first promissory note is dated January 19, 1996 and the last was signed on October 15, 1997.

**4.** The resulting increase of the wife's share of the husband's medical practice and medical license shall be paid in equal monthly installments until May 2014.

ner in which a distributive award is to be paid is discretionary" (*Smith v Smith*, 17 AD3d 959, 960 [2005]) and the imposition of interest on an outstanding debt as a result of equitable distribution is equally within a court's discretion (*see Dewitt v Sheiness*, 42 AD3d 776, 778 [2007]; *Hamroff v Hamroff*, 35 AD3d 365, 366 [2006]).[5]

As for maintenance, Supreme Court directed that the husband pay the wife $400 per week for seven years, or $20,800 annually. The determination of an appropriate maintenance award requires a "delicate balanc[e] of each party's needs and means" (*Matter of Shreffler v Shreffler*, 283 AD2d 679, 680 [2001]; *see Brzuszkiewicz v Brzuszkiewicz*, 28 AD3d 860, 862 [2006]) and consideration of the relevant statutory factors (*see* Domestic Relations Law § 236 [B] [6] [a]). These factors include "the parties' employment history, respective educational background and vocational skills, present and future earning capacity, age and health, each party's ability to become self-supporting, the duration of the marriage, and the present state of their finances" (*Carl v Carl*, 58 AD3d 1036, 1038 [2009]; *see Bean v Bean*, 53 AD3d 718, 721-722 [2008]), as well as their predivorce standard of living (*see Hartog v Hartog*, 85 NY2d 36, 50-51 [1995]). In that regard, the husband earns, on average, $300,000 per year, is in good health and enjoys a significant earning potential for the foreseeable future. In comparison, the wife suffers from chronic asthma, has an annual salary that, in the past, rarely exceeded $50,000 and is not likely to earn significantly more income in the future.[6] Given the length of the marriage, the wife's age and the fact that a substantial portion of the distributive award for her share of the marital assets is deferred, we conclude that the husband's maintenance obligation should be increased to $500 per week for seven years.[7]

While we do not agree with the wife's claim that Supreme Court should have imputed certain income to the husband in its

5. We note, however, that Supreme Court failed to explain its deviation from the statutory 9% interest rate imposed by CPLR 5004. This decision should not be read as an approval of such an omission.

6. The records introduced at trial indicate that the husband earned $304,984, $384,955 and $256,687 for tax years 2001, 2002, 2003, respectively. The wife, for these same years, earned $48,247, $50,217 and $49,811, respectively.

7. As part of their pretrial stipulation, the parties agreed that the wife would retain the marital home while the husband would receive a parcel of developed property that was a marital asset. Nothing in the stipulation establishes the values of these properties or what equity, if any, the parties have in each. Accordingly, this Court cannot appropriately factor the value of these assets in any maintenance calculation.

calculation of child support, we do note that certain errors were committed in the final calculation of that figure that require an adjustment in each party's obligation to pay child support. Specifically, in determining each party's annual gross income, the court neglected to add any income that had been deferred by the parties (*see* Domestic Relations Law § 240 [1-b] [b] [5] [iii]) or deduct all the payments made by them for FICA and Medicare taxes (*see* Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C], [H]). Furthermore, there is no indication that Supreme Court, prior to making this computation, deducted the amount that the husband is paying in maintenance from the total of his gross income (*see* Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C]; *Sullivan v Sullivan*, 46 AD3d 1195, 1197 [2007]; *Burtchaell v Burtchaell*, 42 AD3d 783, 785 [2007]; *Milnarik v Milnarik*, 23 AD3d 960, 961 [2005]). These adjustments, when properly entered into the calculation, will result in a significant reduction in the husband's obligation to pay child support.

The wife also takes issue with the percentages employed by Supreme Court against the parties' combined income in determining the amount to be paid for child support. While it included all of the parties' income in this calculation, Supreme Court used 35% as the percentage to be applied against the first $80,000 of combined income, but reduced the percentage to 25% for any income over $80,000.[8] Supreme Court found that applying the statutory percentage to all of the parties' income, including that in excess of $80,000, would result in an "unjust or inappropriate" award (Domestic Relations Law § 240 [1-b] [f]; *see Hammack v Hammack*, 20 AD3d 700, 701-702 [2005], *lv dismissed* 6 NY3d 807 [2006]). Since the husband's child support obligation will be substantially reduced once his maintenance payments are deducted from his gross income and, as a result of Supreme Court's decision, he is no longer required to contribute to the payment of the children's extracurricular activities—a financial burden borne entirely by the wife—there is no justification from deviating from the statutory percentage. In our view, therefore, the 35% figure should be applied against the entire combined parental income used to calculate child support (*see Matter of Cassano v Cassano*, 85 NY2d 649, 654 [1995]; *Moffre v Moffre*, 29 AD3d 1149, 1150 [2006]; *Golub v*

---

8. The husband's pro rata share of child support was 83% and the wife's pro rata share was 17%.

*Ganz,* 22 AD3d 919, 924 [2005]; *Hammack v Hammack,* 20 AD3d at 701).[9]

As for Supreme Court's determination that the husband should receive a $250 weekly credit against his child support obligations "for overpayments of child support, extracurricular activities and college expenses," we note, as conceded by the husband, that there can be no such offset and that this part of the order must be vacated (*see Matter of Taddonio v Wasserman-Taddonio,* 51 AD3d 935, 936 [2008]; *Baraby v Baraby,* 250 AD2d 201, 205 [1998]). In addition, because the husband will be required to pay additional maintenance, as well as a significant sum for the wife's distributive share of the marital assets, we refuse to revisit Supreme Court's decision that the husband is no longer required to contribute towards the payment of the children's extracurricular activities or that he pay any more of the expert witness fees or the wife's counsel fees (*see* Domestic Relations Law § 237 [a]; *Laura WW. v Peter WW.,* 50 AD3d 1292, 1292-1293 [2008]; *Bellinger v Bellinger,* 46 AD3d 1200, 1203 [2007]; *Freas v Freas,* 33 AD3d 1069, 1071 [2006]; *Redgrave v Redgrave,* 22 AD3d 913, 914 [2005]; *Miller v Miller,* 4 AD3d 718 [2004]; *Farrell v Cleary-Farrell,* 306 AD2d 597, 600 [2003]).

We are of a different view as to Supreme Court's decision regarding the payment of the children's college expenses. In that regard, the court only required the husband to pay half of a loan taken by the wife to defray expenses incurred by their oldest daughter for her first two years in college. This finding, which also served to absolve the husband from any responsibility for any college expenses incurred by any of the remaining six children, appears to be at odds with the court's own observa-

---

**9.** The correct gross income for the husband is $243,444. After adding his voluntary payments deferred ($2,251) and deducting his entire FICA and Medicare taxes paid ($17,662) and his newly established maintenance obligation ($26,000), his adjusted gross income for purposes of child support is $202,033. The correct gross income for the wife is $49,854. After adding her deferred income ($2,656) and deducting her FICA and Medicare taxes ($4,014), her adjusted gross income is $48,496. The parties' combined parental income is $250,529. The husband's pro rata share of this income is 81% and the wife's pro rata share is 19%. The parties' combined child support obligation of the combined adjusted parental income is $87,685 (35% of $250,529) and the husband's pro rata share of this combined obligation is $71,025 annually, or $1,365 per week. This obligation should be adjusted to take into account that period of time that the husband had custody of one child and the wife did not pay child support. Further, this amount of child support shall be adjusted upon the termination of the maintenance obligation to the wife (*see* Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C]; *Navin v Navin,* 22 AD3d 474, 475 [2005]; *Thoma v Thoma,* 21 AD3d 1080, 1082 [2005]; *Smith v Smith,* 1 AD3d 870, 873 [2003]).

tion of the "high value [the parties] place upon learning and knowledge," and the "ambitions and hopes" they have for their children. Given that the evidence presented at trial focused almost exclusively on the oldest child, we find that Supreme Court did not adequately account for the needs of the other children or give appropriate consideration to expectations that appear to have existed within the family unit as to their pursuit of a higher education (*see* Domestic Relations Law § 240 [1-b] [c] [7]; *Evans v Evans*, 55 AD3d 1079, 1083 [2008]; *Matter of Naylor v Galster*, 48 AD3d 951, 953 [2008]; *Brough v Brough*, 285 AD2d at 917). As such, its decree that the husband has no financial responsibility for the payment of college expenses incurred on behalf of the remaining children, per the wife's request, must be stricken (*see* Domestic Relations Law § 240 [1-b] [c] [2]).

Finally, Domestic Relations Law § 236 (B) (8) (a) provides that a court "may also order a party to purchase, maintain or assign a policy of accident insurance or insurance on the life of either spouse, and to designate in the case of life insurance, either spouse or children of the marriage, or in the case of accident insurance, the insured spouse as irrevocable beneficiaries during a period of time fixed by the court." Here, Supreme Court, other than acknowledging that the insurance was to secure the husband's obligation to pay maintenance and the wife's distributive share of the marital assets, failed to set forth any rationale for establishing the face value of the policy at $200,000. Given that the obligations it was intended to secure easily exceed $200,000, such a policy would not serve its intended purpose. Therefore, while Supreme Court has broad discretion in fashioning such an obligation, its order should be modified to the extent that the husband is required to obtain a declining term life insurance policy with an initial face value of $500,000 (*see Bean v Bean*, 53 AD3d at 725; *Blay v Blay*, 51 AD3d 1189, 1192 [2008]; *see also Matter of Anonymous v Anonymous*, 31 AD3d 955, 957 [2006]).

Mercure, J.P., Lahtinen and Malone Jr., JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) increasing the value of plaintiff's medical practice to $98,830, (2) ordering plaintiff to pay 25% for defendant's share of the enhanced earnings from plaintiff's medical license and medical practice, (3) ordering plaintiff to obtain a declining term life insurance policy with an initial face value of $500,000, (4) increasing plaintiff's maintenance obligation to $500 per week until 2012, (5) vacating the provision for a $250 weekly credit against plaintiff's child support obligation, (6) striking

the provision that plaintiff is not responsible for the college expenses of the parties' five younger children, and (7) ordering child support in the amount of $1,364 per week, and, as so modified, affirmed.