■ MARJORIE GOMOLEMO NDULO, Appellant, v MUNA BARON NDULO, Respondent. [888 NYS2d 236]—

Spain, J.P. Appeals (1) from a judgment of the Supreme Court (Mulvey, J.), entered April 4, 2008 in Tompkins County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court, and (2) from an order of said court, entered June 20, 2008 in Tompkins County, which partially denied plaintiff's motion for reconsideration.

In July 2004, plaintiff commenced the instant action for divorce. The parties were married in the Republic of Zambia in 1975, where defendant became a professor at, and eventually dean of, the University of Zambia Law School. During this period, four daughters were born to the parties and plaintiff worked as a dental technician. In 1986, the family moved to Vienna, Austria where defendant took a position with the United Nations and plaintiff devoted her energies to the care of the children and support of defendant's career. In 1996, defendant joined the faculty at Cornell Law School and the family moved

to the City of Ithaca, Tompkins County where plaintiff was first employed part time in a retail store and eventually as a full-time counselor at a local agency which provides assistance to people with special needs.

Marital assets include separate retirement accounts, the marital dwelling in Ithaca, real property in England and South Africa and real estate holdings and business interests in Zambia. Marital debt consists of the mortgage on the marital dwelling, credit card balances and balances on a number of loans taken out in defendant's name that are related to the high cost of educating their children over the years, expenses which continue to accumulate. The children have been educated at expensive private schools and Ivy League colleges, and all but the youngest—who was still in college at the time of the trial—have obtained graduate degrees.

Following a trial, Supreme Court ordered, among other things, an award of two separate parcels of real estate in Zambia—one each—to defendant and plaintiff, the sale of all remaining real estate—including the marital dwelling—with the proceeds to be a divided equally between the parties, along with the remainder of the parties' marital assets, maintenance of $3,000 per month for five years to plaintiff, and the remainder of their marital debt and all plaintiff's counsel fees to be paid by defendant. On a motion by plaintiff for reconsideration, the court found that an additional piece of Zambian real estate was marital property, ordered the sale of all Zambian real estate by January 1, 2009 and awarded plaintiff 50% of the marital portion of any preretirement death benefit payable from defendant's pension account (*see Kazel v Kazel*, 3 NY3d 331, 335 [2004]), but otherwise denied the motion. Plaintiff now appeals from both the April 2008 judgment of divorce and the June 2008 order partially denying reconsideration.

Upon our review of the full record before us, we find merit in plaintiff's major contention that Supreme Court's award of maintenance in the amount of $3,000 per month for a period of five years was insufficient. The amount and duration of maintenance is an issue generally left to the sound discretion of the trial court (*see Schwalb v Schwalb*, 50 AD3d 1206, 1210 [2008]; *Burtchaell v Burtchaell*, 42 AD3d 783, 784-785 [2007]; *Carman v Carman*, 22 AD3d 1004, 1008 [2005]; *Sperling v Sperling*, 165 AD2d 338, 341 [1991]) based upon the enumerated factors set forth in Domestic Relations Law § 236 (B) (6) (a), as well as the predivorce standard of living of the recipient spouse (*see Hartog v Hartog*, 85 NY2d 36, 50-51 [1995]; *Quinn v Quinn*, 61 AD3d 1067, 1071 [2009]; *Bean v Bean*, 53 AD3d 718, 723 [2008]).

Maintenance is appropriate where, among other things, the marriage is of long duration, the recipient spouse has been out of the work force for a number of years, has sacrificed her or his own career development or has made substantial noneconomic contributions to the household or to the career of the payor (*see Lorenz v Lorenz*, 63 AD3d 1361, 1362 [2009]; *Holterman v Holterman*, 307 AD2d 442, 442 [2003], *affd* 3 NY3d 1 [2004]; *Semans v Semans*, 199 AD2d 790, 793). The fact that a wife has the ability to be self-supporting by some standard of living does not mean that she is self-supporting in the context of the marital standard of living (*see Hartog v Hartog*, 85 NY2d at 36; *see also Summer v Summer*, 85 NY2d 1014, 1016 [1995]).

At the time this action was commenced, as found by Supreme Court, there was significant disparity in the parties' incomes with plaintiff earning $15,322 per year and defendant, as a tenured law professor, earning $173,600 per year. The parties had been married for 29 years and were each 59 years old. Although plaintiff had training in dental technology and worked as a dental technician in Zambia early in their marriage, she forfeited her dental technology career and has had, in the recent past, jobs at a retail store and a credit union, and presently at the local special needs agency.

Supreme Court considered these facts and all the relevant statutory factors (*see* Domestic Relations Law § 236 [B] [6] [a]) in setting maintenance and in ordering that defendant pay the costs for continuation of plaintiff's health insurance coverage through his employer under COBRA for the maximum period available. The court also ordered that all marital debt with the exception of the mortgage on the marital dwelling be paid by defendant, holding plaintiff harmless on those obligations, which the court found exceeded $200,000. Moreover, the court ultimately made defendant responsible for all plaintiff's counsel fees. As to the duration of the maintenance award, Supreme Court limited the award to a period of five years, finding a lifetime maintenance award to be unwarranted in light of the resources available to plaintiff upon the sale of the marital assets and plaintiff's responsibility for their marital debt.

Given the length of their marriage, defendant's ability to earn more than six times plaintiff's salary, the uncertainty with respect to the amount of the proceeds of the Zambian holdings, plaintiff's limited earning capacity and ability to improve her financial status due to her lack of education and her age, the parties' predivorce standard of living, plaintiff's eventual loss of her existing health benefits when the COBRA period expires, and defendant's plan to continue working as long as he is

healthy, we find it appropriate to extend the duration of maintenance beyond the five years, at a reduced rate. Accordingly, at the expiration of the five years awarded by Supreme Court (April 1, 2013), maintenance shall continue at the rate of $2,000 per month until defendant fully retires or plaintiff reaches the age of 70, whichever occurs first.

Next, plaintiff contends that Supreme Court's findings regarding marital debt were against the weight of the evidence and/or an abuse of discretion. Plaintiff argues that there was insufficient documentary and/or testimonial evidence to sustain the figures that the court relied upon in calculating defendant's cumulative debt. We disagree. As the court made defendant responsible for their marital debt, no itemization of that debt was necessary. While plaintiff takes issue specifically with the court's calculation of educational debt and the specific debts owed to defendant's family members and others, according deference to the court's fact-finding and credibility determinations in such matters, we find that the court's categorizations, calculations and allocations of those portions of the marital debt are supported in the record.

We also reject plaintiff's contention that Supreme Court's approach to its identification and distribution of major items of marital property was against the weight of the evidence and an abuse of discretion. Such decisions are generally left to the exercise of the trial court's discretion and will not be disturbed so long as there is evidence in the record to support them, and all the relevant statutory factors have been considered (*see* Domestic Relations Law § 236 [B] [5] [d]; *Mairs v Mairs*, 61 AD3d 1204, 1206 [2009]; *Carman v Carman*, 22 AD3d at 1006; *Smith v Smith*, 8 AD3d 728, 729 [2004]). Here, the court expressly applied each of the statutory factors based on the financial circumstances of the parties and determined that an equal distribution of the marital property was appropriate.

As significant questions exist as to the title to and value of the parties' interests in several Zambian real estate and business holdings, Supreme Court ordered the sale of an equal distribution of the proceeds of these assets pending the outcome of the adjudication of any unresolved ownership interests in Zambian courts. We reject plaintiff's assertion that, without the appointment of a referee or some other legal protection, the court's award of proceeds from these properties is rendered illusory because of defendant's connections in Zambia and his superior resources. Contrary to plaintiff's argument, should any illicit transfers and or manipulation of sale proceeds occur, plaintiff—who also has a presence in Zambia—is free to apply

to Supreme Court for relief. Further, the court, in its subsequent decision and order, directed defendant to "provide written notice and written updates to plaintiff regarding all efforts undertaken with regard to the remaining property interests," noting that both parties are represented by counsel and, therefore, sufficiently able to protect their interests in these marital assets.

We do find merit in plaintiff's assertion with respect to the investment accounts held in defendant's name, which included Momentum Wealth Fund, Columbia Funds and First National Bank Unit Trust accounts. The value of these three accounts was included in each party's list of marital assets and, therefore, were arguably considered in Supreme Court's decision to have defendant distribute $1,184 to plaintiff. However, it appears that the court overlooked these accounts in its calculations. Defendant, in his brief, has offered to divide these accounts equally based on their respective values as of the date of commencement of the divorce action. Inasmuch as such a determination would be in accord with the the court's distribution decision, the court's judgment should be modified to clarify that these three investment accounts should be so distributed.

Finally, even assuming, as plaintiff contends, that there were disclosure violations on the part of defendant, such violations were not shown to be willful, contumacious or prejudicial to plaintiff and, thus, do not require reversal (*Matter of Duma v Edgar*, 58 AD3d 1085, 1086 [2009]; *Maillard v Maillard*, 243 AD2d 448, 449 [1997]; *accord Kumar v Kumar*, 63 AD3d 1246, 1248 [2009]). We have considered plaintiff's remaining contentions, including Supreme Court's failure to draw an adverse inference against defendant for his failure to call his brother—who resides in Zambia—as a witness and its failure to take judicial notice of the exchange rate, and find them unpersuasive.

Rose, Lahtinen, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment and order are modified, on the facts, without costs, by ordering that maintenance continue beyond April 1, 2013 at the reduced rate of $2,000 per month until defendant fully retires or plaintiff reaches the age of 70, whichever occurs first, and the proceeds of the Momentum Wealth Fund, Columbia Funds and First National Bank Unit Trust investment accounts, valued as of the date of commencement of this action, shall be equally divided between the parties, and as so modified, affirmed.