■ TERRI A. LIEPMAN, Respondent, v CECIL J. LIEPMAN, Appellant. [717 NYS2d 790] —Peters, J. Appeal from a judgment of the Supreme Court (Teresi, J.), ordering, *inter alia*, equitable distribution of the parties' marital property, entered October 15, 1999 in Albany County, upon a decision of the court.

The parties married on March 27, 1989 and have one minor child. After the commencement of this divorce action in March 1998, they agreed to share joint legal custody with physical custody of such child to plaintiff. With other matters settled by stipulation, a trial limited to issues pertaining to equitable distribution, child support and counsel fees was held in September 1999.

Defendant testified that he attained a Bachelor's degree in finance and insurance in 1975 and, as here relevant, worked for a world-wide insurance brokerage firm as a managing director from 1996 until September 1997, at which time his employment was terminated due to corporate downsizing. While his earnings for 1996 and 1997 were $123,232 and $134,544.59,

respectively, he testified that he was unsuccessful in his search for similar lucrative employment. He secured a financial consultant position in Houston, Texas, earning $34,516 in 1998 and $40,546 through August 1999. Defendant further testified that he was expecting his base salary to be eliminated by May 2000, leaving only his commissions as income.

It appears undisputed that defendant had been paying child support to plaintiff in the amount of $312.50 per month from March 1998 up until the time of trial. Defendant testified that he also had two children from a previous marriage for whom he was obligated to pay $1,250 per month for child support until they reached age 18; the obligation for one child ended by November 1997 but continued until July 1999 for the other. Due to arrearages, however, defendant asserted that he owed his ex-wife $625 per month until the end of 2000. He admitted that while he had submitted a wage deduction order to the court as evidence that his wages were garnished, there was, in fact, no garnishment order in effect because of a stipulated agreement with his ex-wife. Defendant also admitted to other misrepresentations such as a failure to disclose in his statement of net worth the existence of a pension and that he had redeemed certain stock options prior to trial of which he made no claim.

At the time of the commencement of this action, defendant had a total credit card debt in the amount of $23,925, of which $2,000 was used to pay his divorce attorney. He testified that such debt was incurred as a result of consolidating other family debt, including funeral and business trips, cycling expenses, a payment on a van and his dental work.

As of February 1998, plaintiff had a credit card debt of $972. She testified that she earned $22,520 and $14,310 in 1996 and 1997, respectively, as a result of her work as a registered nurse. Since October 31, 1997, however, she was employed at Merrill Lynch earning $4,846 in 1997, $37,639 in 1998 and $36,952 through August 1999.

Supreme Court determined that plaintiff's average income was $31,793, which included a projected income for 1999 based upon her reported income. As to defendant, it determined that his average income was $91,347, again projecting his 1999 income by amounts already earned. Applying the formula delineated in the Child Support Standards Act (*see,* Domestic Relations Law § 240 [1-b] [b] [3] [i]) (hereinafter CSSA), the court calculated defendant's monthly child support obligation to be $1,192. Adding 74% of the health, education and child care expenses, averaging $296.62 per month, it found a

monthly child support obligation in the amount of $1,488.62. Further finding that defendant owed retroactive child support, child care and health insurance expenses to plaintiff in the amount of $24,980.44, the court credited his voluntary payments of child support made after the commencement of this action; the total arrearage was reduced to $20,480.44.

As to defendant's credit card debt, Supreme Court determined that other than his legal fees, only 30% of the remaining amount was used for marital expenses. This determination was based upon credit card statements submitted by defendant for the relevant years which contained his handwritten notations identifying each of the expenses. The court further found defendant responsible for one half of plaintiff's credit card debt, subtracting the total from the marital debt. Moreover, defendant's failure to disclose the existence of a pension and monies received from the redemption of certain stock options prior to trial, exacerbated by his attempt to deceive the court into believing that he had a wage deduction order in effect when the order had been lifted, caused the court to order him to pay 75% of plaintiff's counsel fees. Defendant appeals.

"For child support purposes, a trial court may calculate a parent's gross income by examining his or her 'most recent [F]ederal income tax return' * * * and may take into consideration past employment experience and future earning capacity" (*Matter of Brefka v Dobies*, 271 AD2d 876, 877, *lv denied* 95 NY2d 759 [citations omitted]). Contrary to defendant's contention that Supreme Court improperly imputed income to him, we find that the court properly exercised its discretion (*see, Barnaby v Barnaby*, 259 AD2d 870, 872) based upon its assessment of his " 'ability to provide support' " (*Matter of Ciampi v Sgueglia*, 252 AD2d 755, 756, quoting *Matter of Lutsic v Lutsic*, 245 AD2d 637, 638), despite no indication that his income was reduced for the purpose of avoiding a support obligation (*see, Matter of Lutsic v Lutsic, supra*, at 637).

While we agree with defendant that child support payments made pursuant to a court order or written agreement must be deducted from income before the CSSA percentages are applied (*see*, Domestic Relations Law § 240 [1-b] [b] [5] [vii] [D]; *see also, Matter of Hewitt v Hewitt*, 247 AD2d 751, 752), the record supports Supreme Court's finding that the support of the children from defendant's prior marriage was taken from the parties' joint bank account until March 1998. As to the monthly support payments that he was required to make thereafter, the record reflects that defendant did not actually make such payments and was, in fact, in arrears at the time of trial. For

these reasons, the court's determination of defendant's income for the purpose of calculating his child support obligation will not be disturbed.

We do, however, find error in Supreme Court's calculation of plaintiff's average income since it failed to include $4,846 in earnings from 1997. With such adjustment, plaintiff's total average gross income should have been $33,005, with a combined gross income of $124,352, reduced by FICA to $114,839, which had the effect of further reducing defendant's pro rata share of the obligation to 73.5%. As this amount impacted on the amount set by the court for child support and with a failure to articulate the reasons that the CSSA formula was applied to the combined income in excess of $80,000 (*see,* Domestic Relations Law § 240 [1-b] [c] [3]; *Matter of Mitchell v Mitchell,* 264 AD2d 535, 539, *lv denied* 94 NY2d 754; *Matter of Gluckman v Qua,* 253 AD2d 267, 269-271, *lv denied* 93 NY2d 814), we remit the issue of child support. In so finding, we note no basis to support defendant's contention that he was not credited with the child support payments made to plaintiff for the 12 months subsequent to the commencement of this action.

Turning to the distribution of marital debt, it is settled that " 'outstanding financial obligations incurred during the marriage which are not solely the responsibility of the spouse who incurred them may be offset against the total marital assets to be divided' " (*Jonas v Jonas,* 241 AD2d 839, 840, quoting *Feldman v Feldman,* 204 AD2d 268, 270). Applying this principle, Supreme Court appropriately exercised its discretion in finding that only 30% of defendant's credit card debt was due to marital expenses when it relied upon his own notations reflecting the reasons underlying the charges.

Addressing Supreme Court's discretionary determination of counsel fees (*see, Matter of McCullough v Falardeau,* 184 AD2d 989), we again find no error since the determination was premised upon acts of "[d]efendant, [which] by his deception in hiding marital assets, unnecessarily complicated the case" (*Persaud v Persaud,* 170 AD2d 763, 766).

Accordingly, we hereby modify by reversing so much of Supreme Court's judgment pertaining to the amount of child support and the parties' obligation with respect thereto, and remit to Supreme Court for a recalculation thereof.

Cardona, P. J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as fixed defendant's child support obligation; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.