■ ANNE M. BRZUSZKIEWICZ, Respondent, v PAUL J. BRZUSZKIEWICZ, Appellant. [813 NYS2d 793]—

Rose, J. Appeal from a judgment of the Supreme Court (O'Brien, III, J.), entered June 14, 2005 in Madison County, ordering, inter alia, equitable distribution of the parties' marital property, upon a decision of the court.

This matrimonial action was filed after the parties had been married for 23 years and had three children, only one of whom is now under 21 years of age. Following a nonjury trial, Supreme Court granted plaintiff a divorce and, explaining its reasoning in detail, ordered an equal division of the parties' pensions, distributed all other marital assets to plaintiff and all marital debt to defendant, and directed defendant to pay plaintiff permanent maintenance in the amount of $300 per week. Defendant appeals, and we affirm.

"Courts are not mandated to distribute marital property on an equal basis; rather, marital property is distributed in light of the needs and circumstances of the parties" (*Strang v Strang,* 222 AD2d 975, 977 [1995] [citation omitted]). Here, in addition to the length of the parties' marriage and their disparate incomes, the primary factor in Supreme Court's distribution was its finding that defendant had wastefully dissipated virtually all of the marital assets as well as plaintiff's separate property (*see* Domestic Relations Law § 236 [B] [5] [d] [11]; *Carlson-Subik v Subik,* 257 AD2d 859, 862 [1999]; *Maharam v Maharam,* 245 AD2d 94, 95 [1997]; *Hansen v Hansen,* 207 AD2d 824, 825 [1994]).

This finding is amply supported by evidence that defendant mismanaged his rental property so that its income never exceeded it expenses, incurred excessive credit card debt and invested in a business that resulted in no economic benefit to the parties. As a result of this dissipation, the marital residence was the only remaining asset of significant value. Although valued at $96,000, the residence had a net equity of only $16,000 to $24,000 because defendant had recently extracted most of its value through refinancing to pay off his credit card. In addition, the parties had outstanding debts in excess of $90,000 as well as a large deficiency judgment against them due to foreclosure of a mortgage on defendant's rental property. Although defendant cites the conflicting evidence at trial with respect to how and why the parties' assets were squandered, we cannot say that Supreme Court abused its substantial discretion in assessing credibility (*see Strang v Strang, supra* at 977) and apportioning all debt to defendant while awarding the marital home to plaintiff (*see McKeever v McKeever,* 8 AD3d 702, 702-703 [2004]; *Liepman v Liepman,* 279 AD2d 686, 689 [2001]; *Fuchs v Fuchs,* 276 AD2d 868, 870-871 [2000]).

As to defendant's alleged use of his separate property to make the down payment on the marital residence, the record supports Supreme Court's conclusion that neither party had adequately demonstrated the source and distribution of their claimed

contributions of separate funds (*see e.g. Carpenter v Carpenter,* 202 AD2d 813, 815 [1994]). Nor do we find any inequity in the denial of a credit to defendant for making the down payment, since plaintiff was also denied a credit for her larger, undisputed but undocumented contribution of separate property.

Next, we reject defendant's contention that Supreme Court abused its discretion by awarding plaintiff nondurational maintenance. The record reflects that Supreme Court considered the relevant statutory factors (*see* Domestic Relations Law § 236 [B] [6] [a]), giving particular emphasis to the disparity between the parties' incomes, plaintiff's age, her lack of assets and defendant's dissipation of assets. Defendant earns $55,000 per year and his income will likely increase before he retires. Plaintiff receives only $22,000 per year from her employment and has little prospect of any significant increase before she retires, given that she was 57 years of age at the time of trial and has limited earning capacity due to her arthritis and severe hearing loss. The record also supports Supreme Court's finding that plaintiff's income from her pension and Social Security after retirement will be less than her current earnings, which are already insufficient to meet her modest monthly expenses. These factors all militate in favor of an award of permanent maintenance (*see Summer v Summer,* 85 NY2d 1014, 1016 [1995]; *Holterman v Holterman,* 307 AD2d 442, 442 [2003], *affd* 3 NY3d 1 [2004]; *Kay v Kay,* 302 AD2d 711, 712 [2003]; *Roffey v Roffey,* 217 AD2d 864, 866-867 [1995]).

As for defendant's claimed inability to pay, we note that the amount of permanent maintenance is less than what he had been paying under the temporary support order and reflects the minimum amount needed to maintain plaintiff's modest standard of living. Supreme Court also reasoned that defendant's earnings would increase and his debts would decrease in the future. Thus, the record shows that the court appropriately balanced plaintiff's needs with defendant's ability to pay (*see Gaglio v Molnar-Gaglio,* 300 AD2d 934, 939 [2002]).

Finally, we cannot agree with defendant that Supreme Court should have given him custody of the parties' 20-year-old son, awarded him child support and allowed him to claim the son as a dependent for tax purposes. The record shows that custody of the son was not in dispute during trial and no award of custody was made. Also, as Supreme Court noted, the evidence established that the son was independent, attending college, working and not then residing with defendant despite his desire to do so. From this evidence, the court found that the son was not dependent upon either parent and denied child support. However,

since the son could continue to receive a tuition benefit if he were plaintiff's dependent, Supreme Court did not abuse its discretion in directing that he be plaintiff's dependent as long as he attends college.

Mercure, J.P., Crew III, Peters and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.