■ KRISTIN JAYARAM, Respondent-Appellant, v MOHAN JAYARAM, Appellant-Respondent. [880 NYS2d 305]—

In an action for a divorce and ancillary relief, the defendant former husband appeals, as limited by his notice of appeal and brief, from stated portions of a judgment of the Supreme Court, Westchester County (Giacomo, J.), entered July 17, 2007, which, after a nonjury trial, inter alia, awarded the plaintiff former wife the sum of $1,053,500 as her 35% share of his enhanced earning capacity, prejudgment interest on her distributive award in the sum of $432,954.85, child support in the sum of $1,654 per week, and counsel fees in the sum of $125,000, and failed to provide that the insurance policy which he is required to provide and maintain to secure his obligations to pay the plaintiff's distributive award and child support may be a declining term policy that would permit him to reduce the amount of coverage by the amount of the distributive award and child support actually paid, and the plaintiff cross-appeals, as limited by her brief, from so much of the same judgment as applied a coverture frac-

tion to reduce the valuation of her share of the defendant's enhanced earning capacity.

Ordered that the judgment is modified, on the law and in the exercise of discretion, (1) by deleting the provision thereof awarding the plaintiff the sum of $1,053,500 as her 35% share of the defendant's enhanced earning capacity, and substituting therefor a provision awarding the plaintiff the sum of $514,500 as her 35% share of the defendant's enhanced earning capacity, (2) by deleting the provision thereof awarding the plaintiff prejudgment interest in the sum of $432,954.85, and (3) by adding thereto a provision that the insurance policy which the defendant is required to provide and maintain to secure his obligations to pay the plaintiff's distributive award and child support may be a declining term policy that would permit him to reduce the amount of coverage by the amount of the distributive award and child support actually paid; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

The parties were married on April 20, 1992, and have two children. Prior to the marriage, the husband earned a Masters in Science degree from the Georgia Institute of Technology, and a Ph.D. in mechanical and aerospace engineering from Princeton University. At the time of their marriage, both the husband and wife were employed by IBM. At the beginning of 1995 the husband entered a Columbia University program to earn a Masters in Business Administration (hereinafter MBA), and he subsequently earned that degree in 1996. The husband then embarked on a career in finance, obtaining a position as an investment banker at a brokerage firm with earnings that far exceeded his earnings at IBM. After obtaining his position at the brokerage firm, the husband also obtained certain licenses issued by the National Association of Securities Dealers (hereinafter NASD).

On appeal, the husband contends that the Supreme Court erred in concluding that his MBA degree and NASD licenses provided him with an enhanced earning capacity subject to equitable distribution. We disagree. "An academic degree may constitute a marital asset subject to equitable distribution, even though the degree may not necessarily confer the legal right to engage in a particular profession" (*Judge v Judge*, 48 AD3d 424, 425 [2008]; *see McGowan v McGowan*, 142 AD2d 355, 357 [1988]). Here, while the husband presented some evidence that an MBA degree was not an actual prerequisite to his employment at the brokerage firm, there was also ample evidence, including expert testimony, to support the court's finding that

the attainment of this degree made the husband a more attractive candidate for a position in investment banking. It is also clear from the record that the knowledge of financial products, including options and derivatives, which the husband acquired during his MBA studies, assisted in his advancement at the firm. Accordingly, the court properly concluded that the MBA degree, as well as the NASD licenses which the husband obtained during the course of his employment, enhanced his earning capacity.

The court also properly determined that the wife was entitled to a 35% share of the husband's enhanced earning capacity. Although the wife did not make direct financial contributions to the husband's attainment of his MBA degree and NASD licenses, she made substantial indirect contributions by supporting the husband's educational endeavors, working full-time and contributing her earnings to the family, being the primary caretaker of the couple's children, cooking family meals, and participating in housekeeping responsibilities (*see Holterman v Holterman,* 3 NY3d 1 [2004]; *McSparron v McSparron,* 87 NY2d 275 [1995]; *Chamberlain v Chamberlain,* 24 AD3d 589, 594 [2005]).

However, the court should not have relied solely upon the wife's expert in valuing the husband's enhanced earnings capacity at $4,300,000. The methodology employed by the wife's expert essentially consisted of deducting the husband's baseline earnings from his topline earnings, and projecting this differential over his expected work life. However, under the circumstances of this case, this methodology resulted in overstating the husband's enhanced earning capacity, because it failed to adequately account for the fact that the MBA degree was only one factor in the husband's employment and advancement at the brokerage firm. Moreover, the wife's expert employed only a risk free 3% discount rate in projecting the likelihood that the husband would achieve his projected earnings. The court attempted to arrive at a more accurate valuation of the husband's enhanced earnings by applying a 30% coverture fraction to account for the husband's premarital educational achievements. However, in view of the strong evidence that the mathematical skills which the husband honed prior to the marriage during his engineering studies made him a highly desirable employee at the brokerage firm, application of the coverture fraction was insufficient to arrive at an equitable determination of the wife's share of enhanced earnings. Accordingly, we adopt the $2,100,000 enhanced earning capacity valuation recommended by the court-appointed neutral accountant, which

considers both the husband's base salary and bonuses in determining his topline salary, and reflects a more conservative 7% discount rate. Applying a 30% coverture fraction to $2,100,000, we find that the wife's 35% share of the husband's enhanced earning capacity is $514,500.

Further, the court should not have awarded the wife prejudgment interest on her distributive award. The distributive award was largely comprised of the wife's interest in the husband's enhanced earning capacity, which was not fixed until after trial. Thus, this was not a tangible asset which the wife was deprived the use of during the pendency of the litigation. The balance of the distributive award was comprised of the parties' bank and investment accounts, which the parties stipulated to divide equally. There is no evidence that the husband engaged in any misconduct regarding these accounts, or deprived the wife of their use (*see Schwartz v Schwartz,* 54 AD3d 400, 402 [2008]). Moreover, the accounts increased in value during the pendency of the action.

We discern no basis to disturb the court's determination of the parties' child support obligations, which was made after a careful consideration of the relevant statutory factors (*see Matter of Cassano v Cassano,* 85 NY2d 649 [1995]; *Spreitzer v Spreitzer,* 40 AD3d 840, 842 [2007]). Furthermore, the court properly directed that child support be awarded retroactively to the date upon which the application for support was first made (*see* Domestic Relations Law § 236 [B] [7] [a]; *Miklos v Miklos,* 9 AD3d 397, 399 [2004]).

However, we agree with the husband's contention that the life insurance policy he was required to obtain and maintain in order to secure his obligations may be a declining term policy that would permit him to reduce the amount of coverage by the amount of the distributive award and support actually paid (*see Matter of Moran v Grillo,* 44 AD3d 859, 861 [2007]; *Matter of Anonymous v Anonymous,* 31 AD3d 955, 957 [2006]).

The court's counsel fee award to the wife was not an improvident exercise of discretion (*see DeCabrera v Cabrera-Rosete,* 70 NY2d 879 [1987]).

The husband's remaining contention is based on matter dehors the record and is improperly raised for the first time on appeal. Skelos, J.P., Fisher, Miller and Eng, JJ., concur.