Spain, J.
Appeal from a judgment and amended judgment of the Supreme Court (Meddaugh, J.), entered October 24, 2011 and October 26, 2011 in Sullivan County, granting plaintiff a divorce and ordering, among other things, equitable distribution of the parties’ marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1985. At that time, the husband owned an apartment building in Manhattan (hereinafter the NYC rental property), as well as a one-half interest in real property located in the Town of Tusten, Sullivan County (hereinafter the marital residence), where the parties resided for the duration of their marriage. The husband inherited the other one-half interest in the marital residence in 1986, following his father’s death. After the birth of the parties’ first child in 1987, the husband gradually gave up his photography business, and *1172 the family lived on the income generated by the NYC rental property. A second child was born in 1993 and, in 1998, the wife earned a Bachelor’s degree in nursing and obtained her license as a registered nurse. During the marriage, aside from very brief periods of employment, the wife was not employed as a nurse or otherwise. In 2007, the husband sold the NYC rental property for $6 million and, thereafter, the family was supported by the proceeds.
The parties separated in 2008 and, in 2009, the wife commenced the instant action for divorce. In October 2010, the wife was granted pendente lite spousal support of $3,500 per month and $7,500 in interim counsel fees. At the time of the bench trial in March 2011, the parties’ oldest child was emancipated and the youngest child, who had reached the age of 18, was residing with the husband in the marital residence. Following a trial and on the consent of the husband to the wife’s allegations of constructive abandonment, Supreme Court granted the parties a divorce. The court subsequently adjudged both the NYC rental property and the marital residence to be the separate property of the husband, awarded him a 30% share of the wife’s enhanced earning capacity as a nurse and awarded her a 40% share of the appreciation of the marital residence during the marriage which, when offset by the husband’s enhanced earnings share, resulted in a net equitable distribution award to the wife of $100,400. The court further awarded the wife maintenance of $18,000 to be paid over a period of nine months, as well as additional counsel fees in the amount of $25,000.[1] The wife now appeals, challenging the court’s separate property determinations and contending that the amounts awarded to her for equitable distribution, maintenance and counsel fees were inadequate.
First, addressing Supreme Court’s classification of certain property as separate property not subject to equitable distribution, the Domestic Relations Law defines separate property as that “acquired before marriage or . . .by bequest, devise, or descent, or gift from a party other than the spouse” (Domestic Relations Law § 236 [B] [1] [d] [1]). Separate property also includes “the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse” (Domestic Relations Law § 236 [B] [1] [d] [3]; see Keil v Keil, 85 AD3d 1233, 1235 [2011]). Moreover, “property [that is] acquired in exchange for [separate] property, even if the exchange occurs during marriage, is separate proper *1173 ty” (Chernoff v Chernoff, 31 AD3d 900, 902-903 [2006]; see Domestic Relations Law § 236 [B] [1] [d] [3]), and “ ‘the initial determination of whether a particular asset is marital or separate property is a question of law’ ” (Armstrong v Armstrong, 72 AD3d 1409, 1415 [2010], quoting DeJesus v DeJesus, 90 NY2d 643, 647 [1997]).
Here, it is undisputed that the husband purchased the NYC rental property in 1978 — seven years prior to the marriage — for $130,000 and, when he sold it for $6 million in September 2007, he ultimately received $4.6 million. The husband testified that he utilized an absentee management system wherein tenants of the rental units would communicate directly with maintenance and utility workers, and that the wife never had any involvement in managing the property. While the husband may have treated the rental income as marital income, the proceeds from the sale of the property were wired to a bank account that was in his name only. Insofar as the wife failed to carry her burden of demonstrating that the property or the sale proceeds transmuted to marital property (see Keil v Keil, 85 AD3d at 1235; Armstrong v Armstrong, 72 AD3d at 1415; Chernoff v Chernoff, 31 AD3d at 902-903), or that she contributed in any significant way to the appreciation in the property’s value (see Bonanno v Bonanno, 57 AD3d 1260, 1261 [2008]; Chernoff v Chernoff, 31 AD3d at 903), the record fully supports Supreme Court’s conclusion — crediting the husband’s testimony — that this property constituted separate property. The court also properly concluded that the marital residence, which remained in the husband’s name alone throughout the marriage, was his separate property. As the husband has not challenged the court’s determination that the wife was entitled to a share of the appreciation in value of the marital residence, we need not address that issue.
The next contention that the wife places squarely before us is whether a court is empowered to consider one spouse’s wasteful dissipation of separate property during the marriage as a relevant factor when later resolving equitable distribution and maintenance. Supreme Court found that the husband had wastefully dissipated his substantial separate property, but concluded that, because it was separate property, as distinguished from marital property, such dissipation was not encompassed in the statutory factors of Domestic Relations Law § 236 (B); thus, the court did not consider this dissipation in its otherwise thorough determination of the wife’s equitable distribution and maintenance awards. We agree with the wife, however, that — in appropriate circumstances — evidence of *1174 egregious economic fault in mismanaging, dissipating and wasting separate assets can and should be considered under the statutory catchall “just and proper” factor for equitable distribution and maintenance, respectively Domestic Relations Law § 236 (B) (5) (d) (former [13]) and Domestic Relations Law § 236 (B) (6) (a) (former [11]),[2] and the husband presents no argument to the contrary.
It is beyond cavil that the wasteful dissipation of marital assets and other economic fault related to marital assets is a relevant factor in equitable distribution and maintenance awards (see Domestic Relations Law § 236 [B] [5] [d] [former (11)]; [B] [6] [a] [former (9), (10)]; Brzuszkiewicz v Brzuszkiewicz, 28 AD3d 860, 861-862 [2006]). Although separate property itself is not subject to equitable distribution, it may be taken into consideration in equitably distributing marital property under the statutory factors pertaining to each parties’ income and property at the commencement of the action, the potential loss of inheritance rights, and both parties’ probable future financial circumstances (see Domestic Relations Law § 236 [B] [5] [d] [former (1), (4), (8)]; Armstrong v Armstrong, 72 AD3d at 1416; Petrie v Petrie, 143 AD2d 258, 259 [1988], lv denied 73 NY2d 702 [1988]; Brennan v Brennan, 103 AD2d 48, 54-55 [1984]; Alan D. Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:25 at 234, 238). Likewise, separate property is taken into account in maintenance determinations under the statutory factors contemplating consideration of each parties’ income and property, the present and future earning capacity of each party and the ability of each party to become self-supporting (see Domestic Relations Law § 236 [B] [6] [a] [former (1), (3), (4)]; Carl v Carl, 58 AD3d 1036, 1037 [2009]; Alan D. Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:8 at 128; C236B:36 at 295; see e.g. Saia v Saia, 91 AD3d 1110, 1111 [2012]; Penna v Penna, 29 AD3d 970, 972 [2006]; Kearns v Kearns, 270 AD2d 392, 393 [2000], lv denied 95 NY2d 760 [2000]). Indeed, “the fact that a portion of [a spouse’s] income is derived from an asset determined to be separate property not subject to equitable distribution does not render that income immune from consideration in calculating a party’s maintenance obligation” (Carl v Carl, 58 AD3d at 1037). We further note that financial disclosure pertaining to separate property can be compelled as relevant to both distribution and maintenance (see Jaffe v Jaffe, 91 AD3d 551, 554 [2012]).
*1175 Considering that “[e]conomic fault, which [includes] conduct [that] unfairly prevents the court from making an equitable distribution of marital property, has generally been considered relevant to the distribution” (Blickstein v Blickstein, 99 AD2d 287, 293 [1984], appeal dismissed 62 NY2d 802 [1984]; see Brzuszkiewicz v Brzuszkiewicz, 28 AD3d at 861; Griffin v Griffin, 115 AD2d 587, 588 [1985]; see also Maharam v Maharam, 245 AD2d 94, 94-95 [1997]), and that the catchall factors provide “substantial flexibility [to] fashion[ ] an appropriate decree based on what i[s] . . . fair and equitable under the circumstances” (Mahoney-Buntzman v Buntzman, 12 NY3d 415, 420 [2009]), we conclude that, in compelling circumstances, a spouse’s wasteful dissipation of his or her separate assets, may “just[ly] and proper[ly]” be considered relevant to equitable distribution and maintenance (Domestic Relations Law § 236 [B] [5] [d] [former (13)]; [B] [6] [a] [former (11)]; see Alan D. Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:36 at 300; see also Mulverhill v Mulverhill, 268 AD2d 948, 949 [2000]; Rheinheimer v Rheinheimer, 235 AD2d 742, 743 [1997]). Recognizing that “[a] trial court has substantial discretion to fashion [equitable distribution and maintenance] awards based on the circumstances of each case” (Vertucci v Vertucci, 103 AD3d 999, 1001 [2013]; see Williams v Williams, 99 AD3d 1094, 1096 [2012]) and that our discretion in determining such issues is just as broad (see Majauskas v Majauskas, 61 NY2d 481, 493 [1984]; Moschetti v Moschetti, 277 AD2d 838, 839 [2000]), we turn to whether modification of the wife’s equitable distribution and maintenance awards is warranted here.
By the time of the 2011 trial, most of the proceeds from the 2007 sale of the NYC rental property ($4.6 million) had been spent or lost as a result of the husband’s poorly made and/or mismanaged investments. It is troubling that he did not, in the record before us, account for exactly what happened to most of these proceeds. The record demonstrates, as Supreme Court found, that his incredible losses within a relatively short period of time were not merely the product of market forces but, rather, were also attributable to his gross mismanagement and wasteful spending. For example, shortly after receiving the sale proceeds, the husband invested $2 million in one investment account, and failed to monitor his losses or exercise any oversight over the funds; almost all of those funds had been lost or were being held in escrow, out of his control, at the time of trial. In addition, the husband set up one brokerage account that was worth almost $1.2 million in May 2008, but was fully depleted by June 2009. Another of his brokerage accounts, worth *1176 $621,000 in May 2009, had. been depleted to $10.91 by December 2010. Upon our review of the record before us, we agree with the court’s finding that the husband wastefully dissipated millions of dollars of his separate property and was “extremely cavalier” about the condition of his investments.
Moreover, Supreme Court also found that there were numerous withdrawals of large sums of cash from the husband’s accounts over the year leading up to the parties’ separation, for which he offered no explanation. Indeed, the “evidence suggests that [the husband’s] claimed . . . poverty was contrived [, which] provide [s] an ample basis for [our] determination that [he] was guilty of economic fault, [and] which is clearly a factor that may be considered” (Griffin v Griffin, 115 AD2d at 588 [citation omitted]). Although the husband apparently qualified for Medicaid eight months before trial, the court found, and the record confirms, that he “continued to make significant expenditures!,] . . . still had several hundred thousand dollars in liquid assets” and that, as of the time of trial, he had “been able to preserve some semblance of the parties’ former lifestyle.”
Turning, then, to the determination of the wife’s maintenance award, her ability to be self-supporting must be considered within the context of the parties’ predivorce standard of living (see Domestic Relations Law § 236 [B] [6] [a] [former (4)]; Ndulo v Ndulo, 66 AD3d 1263, 1265 [2009]). Here, the parties’ marital residence was a well-furnished, 4,500-square-foot home overlooking the Delaware River, situated on five acres of land, with superior amenities. The record further establishes that, throughout the majority of their marriage, the parties and their children enjoyed a very comfortable lifestyle in a dwelling that was beyond the average home. Indeed, it was not necessary for either party to be employed to sustain that lifestyle, and the husband conceded, at trial, that this more than comfortable lifestyle became lavish after he sold the NYC rental property.
By contrast, from the time of the parties’ 2008 separation to the time of the 2011 trial, the wife was virtually without assets or a steady income. Although she had a 2004 Mercedes station wagon, it was not operable and needed extensive costly repairs, which she testified compounded her difficulty in finding suitable employment. While she held several part-time or per diem positions during the pendency of this action, she also testified that she was without health insurance, owed her mother $15,000, owed her attorney approximately $49,000 and had only about $1,000 in her checking account. Significantly, Supreme Court recognized that the maintenance award of $2,000 per *1177 month for nine months was “insufficient” to meet the wife’s basic monthly expenses while she prepared to reenter the nursing field. The husband, on the other hand, was collecting Social Security and held in excess of $80,000 in documented assets in banks and in E-trade accounts at the time of trial. He owned a 2005 Mercedes that he had purchased in 2007 for $42,000 and a 1995 Jaguar convertible with no stated value. Additionally, he held title to the marital residence — which was not encumbered by any mortgage or liens and was valued by the court at $465,000 — had paid over $65,000 to his matrimonial attorneys and was virtually debt free.
Our review of the record supports the conclusion that, under the circumstances of this case, “[t]he fact that [the] wife has the ability to be self-supporting by some standard of living does not mean that she is self-supporting in the context of the marital standard of living” (Ndulo v Ndulo, 66 AD3d at 1265; see Hartog v Hartog, 85 NY2d 36, 52 [1995]). In modifying this award we determine “the amount of earnings necessary to enable the [wife] to become self-supporting [by] . . . reference to the standard of living of the parties, as well as the earning capacity of each party; and these factors carry more weight in [this] marriage of long duration” (Garvey v Garvey, 223 AD2d 968, 970 [1996]). Imputing to the husband the substantial income that he would have earned had he not been so cavalier and wasteful in the manner in which he blatantly risked virtually all of his capital (see Scala v Scala, 59 AD3d 1042, 1043 [2009]; Rogers v Rogers, 52 AD3d 354, 354 [2008]), and affording the wife more time to prepare for and find suitable employment, we extend the wife’s maintenance award of $2,000 per month for nine months to a period of 24 months, for a total of $48,000. We further modify the award of equitable distribution — taking into account the parties’ assets at the commencement of the action and the husband’s economic fault — to award the wife 50%, rather than 40%, of the appreciation in the value of the marital residence. We decline, however, to modify Supreme Court’s award to the husband of 30% of the enhanced earnings attributable to the wife’s nursing degree, as he encouraged her to pursue her dream, financed her education and was the primary caregiver for the children while she pursued her degree full time (see generally Farrell v Cleary-Farrell, 306 AD2d 597, 599 [2003]).
Supreme Court’s finding that the husband was able to maintain his previous lifestyle with thousands of dollars in liquid assets — which conflicts with its rationale that he was unable to pay a more substantial portion of the wife’s counsel *1178 fees — justifies an increase in the award of counsel fees to the wife (see Armstrong v Armstrong, 72 AD3d at 1416). Supreme Court found that the approximately $64,000 in counsel fees incurred by the wife were “necessary based on the complexity of the issues” and warranted by her attorney’s experience, ability and reputation. Accordingly, we award her an additional $10,000 in counsel fees.
Rose, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment and amended judgment are modified, on the law and the facts, without costs, by reversing so much thereof as awarded plaintiff (1) maintenance in the amount of $2,000 per month for nine months, (2) 40% of the $335,000 of appreciation in the marital residence, and (3) $25,000 in counsel fees; award plaintiff (1) maintenance in the amount of $2,000 per month for 24 months, (2) 50% of the $335,000 appreciation in the marital residence ($167,500) and (3) $35,000 in counsel fees; and, as so modified, affirmed.

. A technical amendment was made to the original judgment to correct a typographical error.

. The citations to Domestic Relations Law § 236 herein are to the version of the statute in effect at the commencement of this action in January 2009.