Mulvey, J.
 

 Appeal from a judgment of the Supreme Court (Breslin, J.), entered May 26, 2016 in Albany County, ordering, among other things, equitable distribution of the parties’ marital property, upon a decision of the court.
 

 Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1987 and have two children (born in 1989 and 1994). In 2012, after the parties separated, the children, ages 23 and 18, continued to reside with the husband, and the wife commenced this action for divorce. Following a lengthy trial in 2013 and 2014, Supreme Court, among other things, equitably—essentially equally—distributed the parties’ marital assets, directed the husband to pay the wife nondura-tional maintenance and declined to award the husband child support for the parties’ youngest child, a college student. The husband now appeals.
 

 The husband challenges both the amount and duration of the maintenance award of $794.42 per week, arguing, among other things, that it should terminate or be proportionately reduced upon the wife’s receipt of her one-half share of his Social Security benefits when he reaches the age of 62. The amount and duration of maintenance are generally left to the sound discretion of the trial court (see Barnhart v Barnhart, 148 AD3d 1264, 1267 [2017]) provided that it considers the statutory factors, as well as the parties’ predivorce standard of living (see Domestic Relations Law § 236 [B] [former (6) (a)]). A review of the lengthy record and Supreme Court’s written decision reflects that the court carefully considered all of the relevant statutory factors and made a “reasoned analysis of the factors it ultimately relie [d] upon,” including the lengthy (24-year) marriage and the parties’ ages (both in their early 50s) (Curley v Curley, 125 AD3d 1227, 1228 [2015]). The record establishes that the wife, a high school graduate with a limited work history, had ceased outside employment to assume primary responsibility for their children and household, and had accommodated the husband’s work-related relocations and extensive international travel. The court further considered, in awarding nondurational maintenance, that the wife is disabled due to a progressive, debilitating neurological condition
 
 [1]
 
 that worsened over the course of the trial and requires ongoing taxing medical treatment; she requires assistance with some of the tasks of daily living and travel for medical treatment and is unable to work. Since 2012, the wife has received Social Security disability (hereinafter SSD) pay of $685 per month and moved to New Hampshire to be near her sister who, along with others, is providing assistance to the wife without compensation, although there is every reason to believe that she will eventually need to pay for many of these assistive services. The court required the wife, who lost her health insurance through the husband’s employer, to pay for her own health insurance costs.
 
 [2]
 

 The husband, by comparison, has a college degree and has been continuously employed throughout the marriage, earning a $125,000 annual salary with extensive benefits, expenses and health insurance that covered the family. He also has other sources of income in varying amounts that, the year prior to the action, included $3,700 from writing and up to $8,000 for engine repair work. The husband, who is healthy, had inherited three parcels of real property located in Bolton Landing, Warren County from his father in 1999, where the parties lived for a time. After extensive improvements and investment by the parties, who paid the mortgage on the property from their joint bank account, the properties were sold in 2013 for $1.4 million. The net proceeds from the sale of the property, approximately $415,000, were designated as the husband’s separate property; the wife received $14,000 for her one-half share of the increase in the value of that property and $35,784 for her one-half share of the reduction in the principle on the mortgage, for a total distributive award of $49,784. The husband also inherited an IRA valued at approximately $700,000, which is his separate property and provides disbursements to him. The husband’s IRA, valued at approximately $102,000, was divided equally, and each party will be able to draw on their share at age 59V2. The parties’ adult, employed child lives with the husband, and the younger child, a college student, lives with him during school breaks. Supreme Court expressly took into consideration that the husband is assisting the younger child with college expenses in making the maintenance award.
 
 [3]
 

 While “the purpose of maintenance is to provide temporary support while the recipient develops the skills and experience necessary to become self-sufficient” (Pfister v Pfister, 146 AD3d 1135, 1138 [2017] [internal quotation marks and citations omitted]), Supreme Court found, and it was not meaningfully controverted, that the wife’s condition left her “unable to become self-supporting.” Under the foregoing circumstances, we are not persuaded that the court’s nondurational maintenance award was improvident. Nor do we agree that it should have been reduced or terminated upon the wife’s receipt of her one-half share of the husband’s Social Security benefits, when he reaches the age of 62. The wife’s eventual combined monthly income at age 62 of $5,373—from SSD ($685), Social Security ($1,245.50) and maintenance ($3,442.50)—is not excessive or unreasonable in view of her marital standard of living (see Summer v Summer, 85 NY2d 1014, 1016 [1995]), degenerative health, lengthy marriage and lack of any other assets or earning potential. It is further appropriate given the relatively modest distributive award to her due to the lack of any significant marital assets to sell or assign to her (compare Gifford v Gifford, 132 AD3d 1123, 1124-1125 [2015]; Settle v McCoy, 108 AD3d 810, 811-812 [2013]). Significantly, the husband, age 51 at the time of the trial, remains lucratively employed, his income and earnings will likely grow and he can continue to contribute to retirement accounts for many years before his retirement. He will also collect his share of Social Security benefits when he reaches full retirement age, $2,491 at age 67. Further, he has considerable additional appreciating assets, including his inherited, sizeable IRA (approximately $700,000) and the net proceeds from the sale of the inherited properties (over $400,000), with a combined value exceeding $1.1 million.
 

 “Although separate property itself is not subject to equitable distribution, it may be taken into consideration in equitably distributing marital property .... Likewise, separate property is taken into account in maintenance determinations under the statutory factors contemplating consideration of each parties’ income and property, the present and future earning capacity of each party and the ability of each party to become self-supporting” (Owens v Owens, 107 AD3d 1171, 1174 [2013] [citations omitted], citing Domestic Relations Law § 236 [B] [6] [a] [former (1), (3) and (4)]). Thus, contrary to the husband’s contentions, “the fact that a portion of [his] income is derived from an asset determined to be separate property not subject to equitable distribution does not render that income immune from consideration in calculating [his] maintenance obligation” (Owens v Owens, 107 AD3d at 1174 [internal quotation marks and citation omitted]). Despite the husband’s protestations, Supreme Court was not required to order that, upon receipt of Social Security at age 62, the wife must lose all maintenance and must subsist on the more meager monthly Social Security income ($1,245.50), combined with SSD ($685), of $1,930.50 ($23,166 annually). Further, the court was not obligated to freeze the wife’s benefits at the level set upon the divorce, $4,127.50 (SSD and maintenance), by reducing maintenance by the amount of Social Security (see DiPalma v DiPalma, 112 AD3d 663, 665 [2013]). We recognize that “the receipt of Social Security benefits is a factor to be considered” (Wheeler v Wheeler, 12 AD3d 982, 983 [2004] [emphasis added]) and that, for a variety of reasons, maintenance awards often terminate or are proportionately reduced upon a spouse’s subsequent receipt of Social Security (see Repetti v Repetti, 147 AD3d 1094, 1096 [2017]). However, on these facts, we cannot conclude that the court abused its considerable discretion in declining to do so here (see Scarpace v Scarpace, 84 AD3d 1537, 1538-1539 [2011]; Holterman v Holterman, 307 AD2d 442, 442 [2003], affd 3 NY3d 1 [2004]).
 

 For similar reasons, we are unpersuaded by the husband’s argument that this Court should terminate Supreme Court’s directive that he maintain, for the wife’s benefit, the life insurance policy obtained through his employer (see Domestic Relations Law § 236 [B] [8] [a]; Murray v Murray, 101 AD3d 1320, 1325 [2012], lv dismissed 20 NY3d 1085 [2013]; compare Murphy v Murphy, 125 AD3d 1265, 1267 [2015]). Such insurance is a “means to secure maintenance,” which ceases upon the payor’s death, so that the surviving former spouse, who is dependent, “will be adequately protected” (Hartog v Hartog, 85 NY2d 36, 50 [1995]; see Domestic Relations Law § 236 [B] [6] [a]; [8] [a]). The husband is correct that courts often authorize the purchase of a declining term life insurance policy that reduces the amount of coverage as the awards (maintenance, distributive and/or child support) are actually paid (see Funaro v Funaro, 141 AD3d 893, 898 [2016]; Jayaram v Jayaram, 62 AD3d 951, 954 [2009]; Quinn v Quinn, 61 AD3d 1067, 1073 [2009]). Here, however, Supreme Court included the life insurance directive in a separate provision from the maintenance award, supporting the conclusion that the policy was not intended merely to secure his payment of maintenance, but was part of her award. Accordingly, we decline to disturb the court’s discretionary award with regard to the life insurance policy.
 

 The husband further contends that Supreme Court erred in declining to grant his request for child support of the younger child, age 20 at the time of the trial. While the court did not make an express finding of constructive emancipation—an issue raised by the wife—the record is sufficient to permit this Court to make this finding (see Wallace v Wallace, 154 AD3d 1078, 1079 [2017]; Murray v Murray, 101 AD3d at 1325).
 
 [4]
 
 To that end, “a parent’s obligation to support a child until he or she reaches age 21 may be suspended where the child, although not financially self sufficient, abandons that parent’s home without sufficient cause and withdraws from the parent’s control, refusing to comply with reasonable parental demands, under the doctrine of constructive emancipation” (Matter of Jacobi v Lewis, 92 AD3d 1100, 1100 [2012] [internal quotation marks, brackets and citations omitted]; see Matter of Parker v Stage, 43 NY2d 128, 132 [1977]; Matter of Dejesus v Dejesus, 152 AD3d 585, 585-586 [2017]).
 

 The record, including an affidavit from the child, reflects that she has resided with the husband since the parties’ separation, has since refused all contact with the wife and has sent communications to the wife making clear that there would be no contact or relationship between them. The wife made many varied efforts, for a reasonable period of time, to have contact and communicate with the child, to no avail (compare Matter of Addimando v Huerta, 147 AD3d 750, 753 [2017]). The record does not support the conclusion that the wife caused the breakdown, failed to make serious efforts to contact the child or that the child justifiably refused to continue the parental relationship due to any misconduct or neglect by the wife (compare Matter of Dempsey v Arreglado, 95 AD3d 1388, 1389-1390 [2012]; Matter of Juneau v Morzillo, 56 AD3d 1082, 1085-1086 [2008]). We further defer to Supreme Court’s credibility determination that, contrary to the husband’s testimony, he did not encourage the child to have a relationship with the wife (see Matter of Dempsey v Arreglado, 95 AD3d at 1390). Thus, we find that the wife satisfied her burden of proving that the child’s refusal of all contact and abandonment of her was unjustified, and that the child forfeited the right to support from her (see Matter of Jacobi v Lewis, 92 AD3d at 1101).
 

 Finally, we agree with the husband’s contention that Supreme Court should not have awarded the wife one half of the $8,500 proceeds from the 2011 sale of their boat prior to the commencement of this action.
 
 [5]
 
 The husband testified, without contradiction, that he had deposited all of the proceeds from that sale into his personal checking account. The court awarded the wife one half of that account. Although equitable distribution does not require equal distribution (see Funaro v Funaro, 141 AD3d at 896), we find that the court did not intend to essentially award the wife the boat proceeds twice, and that doing so was inadvertent. Accordingly, the wife should not receive a distributive award of $4,250 from the sale proceeds of that boat.
 

 Egan Jr., J.P., Devine, Clark and Rumsey, JJ., concur.
 

 Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded plaintiff $4,250 as a distributive award from the sale of a boat, and, as so modified, affirmed.
 

 [1]
 

 . The diagnosis occurred in the 1990s.
 

 [2]
 

 . The record reflects that the wife is expected to qualify for Medicare and will bear the expenses associated with that and any supplemental coverage.
 

 [3]
 

 . Supreme Court held that the education accounts set up by the parties are separate property to be used for the benefit of the children’s education and, if not so used, marital property subject to equitable distribution. The court further noted that it is “unclear what became of” the children’s inheritance ($75,000 each to be placed in a trust) designated in the paternal grandfather’s will. The husband testified that no trust was set up because there were insufficient funds in the estate to establish trusts.
 

 [4]
 

 . Supreme Court concluded that the husband was not seeking child support from the wife, based upon posttrial submissions. While the husband’s counsel submitted a posttrial affidavit opposing, among other relief, paying the wife’s counsel fees, arguing in this context that “[t]he case did not involve issues regarding child support,” we cannot conclude that the husband expressly waived child support (see Matter of Hastie v Tokle, 122 AD3d 1129, 1129-1130 [2014]).
 

 [5]
 

 . Supreme Court also awarded the wife one half of the proceeds of three other boats to be sold.